STATE FRATERNAL ORDER OF POLICE, GRAND LODGE NO. 1, ET AL., APPELLANTS, *v.* THE STATE OF OHIO ET AL., APPELLEES.

[Cite as Fraternal Order of Police *v.* State (1983), 4 Ohio St. 3d 28.]

(No. 82-253—Decided March 16, 1983.)

*Messrs. Brannon & Cox, Mr. Dwight D. Brannon* and *Mr. Thomas M. Hanna,* for appellants.

*Mr. William J. Brown,* attorney general, *Mr. Howard D. Silver* and *Mr. Joseph Scuro, Jr.,* for appellees.

*Per Curiam.*

I

The appellants' major proposition of law is that R.C. 124.01 *et seq.,* the sections of Ohio law dealing with civil service employees, rather than R.C. Chapter 5503, providing for the State Highway Patrol, control the procedure for the promotion of officers of the patrol. We must disagree with this contention, and do so primarily in reliance upon this court's holding in *State, ex rel. Myers,* v. *Chiaramonte* (1976), 46 Ohio St. 2d 230 [75 O.O.2d 283].

The General Assembly, in establishing the State Highway Patrol, has created an agency of state government with significant law enforcement powers that are carried out through the rather broad grant of administrative authority to the superintendent of the patrol, with the approval of the Director of Highway Safety. R.C. 5503.01 vests the patrol, as peace officers, with authority to enforce the laws of the state, which the patrol is bound to enforce. R.C. 5503.02 designates the duties of the patrol, which include enforcing the law of Ohio with respect to titling, registration and licensing of motor vehicles; and enforcing all the laws relating to the operation and use of motor vehicles on the highways of Ohio, including weight and speed of commercial motor vehicles. The patrol also has the authority to enforce the criminal laws of Ohio on all state properties and state institutions owned or leased by the state and, when ordered by the Governor in the event of a riot or insurrection, to assist the sheriff of a county or the chief executive of a city to enforce criminal laws within the area threatened by such riot, civil disorder, or insurrection. R.C. 5503.02 also requires the patrol to undertake major criminal investigations involving state property interests upon the order of the Governor and to provide security for the Governor and the state capitol building and other state property. Clearly, the General Assembly has determined that the patrol is to be more than a police force that enforces only traffic laws and auto registration laws of this state. Its name notwithstanding, the patrol possesses most of the power of any other police force in Ohio and, indeed, with more power in the event of a riot, insurrection or civil disorder.

The powers and duties of the superintendent are set forth in R.C. 5503.03, which, in pertinent part, states:

"The superintendent, with the approval of the director, shall prescribe rules for instruction and discipline, make all administrative rules and regula-

tions, and fix the hours of duty for patrolmen. He shall divide the state into districts and assign members of the patrol to such districts in a manner that he deems proper. He may transfer members of the patrol from one district to another, and classify and rank members of the patrol. All promotions to a higher grade shall be made from the next lower grade."

Appellants argue that civil service for the state, which should be applicable to these appellants, had been initially provided for by Section 10, Article XV of the Ohio Constitution, which states:

"Appointments and promotions in the civil service of the state, the several counties, and cities, shall be made according to merit and fitness, to be ascertained, as far as practicable, by competitive examinations. Laws shall be passed providing for the enforcement of this provision."

Appellants further argue that the provisions of R.C. Chapter 124 implement the civil service laws for Ohio and, as such, they take precedence over the provisions of R.C. 5503.03 as such laws relate to the promotions of these employees.

The claimed predominance of R.C. Chapter 124 over provisions of R.C. 5503.03 was brought before this court in *Chiaramonte, supra,* in another, but similar, stance. The plaintiffs in that case claimed that the Superintendent of the State Highway Patrol had no authority under R.C. 5503.03 to make permanent transfers of patrolmen, but that any such transfers should be carried out pursuant to R.C. 124.33, which requires hearing procedures when the employee does not wish to be transferred.

This court, in *Chiaramonte,* at page 233, first made it clear that the court did "not decide whether state highway patrolmen are classified or unclassified civil service employees, or otherwise"; then, after reviewing the provisions of R.C. Chapter 5503 and comparing them with the provisions of R.C. Chapter 124, stated, at pages 236-237 of the opinion:

"Analysis of the above provisions of R.C. Chapter 5503 and comparison of them with the provisions of R.C. Chapter 124 evidence a lack of legislative guidance as to the status of state highway patrol personnel vis a vis the civil service laws of this state. Only in R.C. 5503.05 and 5503.21 is there any reference at all to the civil service laws of this state set forth in R.C. Chapter 124, and even these two references do not compel the conclusion that the operation of the state highway patrol is totally subject to all aspects of the civil service statutory scheme in Ohio. Moreover, there is no requirement in R.C. 5503.01 that patrolmen or other personnel be appointed from eligible lists compiled as a result of a competitive examination to determine merit and fitness. In fact, R.C. 5503.05 seems to negate any such requirement, and, instead, authorizes the superintendent of the state highway patrol to 'establish rules and regulations governing the qualifications for admission' to the patrol training schools and 'to provide for competitive examinations to determine the fitness of such students and prospective patrolmen, *not inconsistent* with the rules and regulations of the civil service commission.' (Emphasis added.) A strong argument can be advanced, based upon the above

quoted language of R.C. 5503.05, that the civil service laws of this state serve only to *guide* the method of selection of the state highway patrol personnel, and are not intended to *control* such process of selection."

This court, in *Chiaramonte,* after observing that the General Assembly had not clearly defined the relationship between the State Highway Patrol and the civil service laws, held that the two sections of law are irreconcilably in conflict and that the specific legislation of R.C. Chapter 5503 would control over the general provisions of R.C. Chapter 124, in that the General Assembly had not manifested an intent that the general provision should prevail over the specific as provided within R.C. 1.51.

Again, for purposes of this case, we do not feel it necessary to make any specific determination as to whether the patrolmen are classified, unclassified, or otherwise, within the civil service.

Additionally, we hold that the rationale of the court in its construction of the applicable statutes, as pronounced in *Chiaramonte,* is equally applicable and controlling here regarding the issue of promotion of patrolmen. We agree with the majority of the court of appeals that R.C. 5503.03 grants to the superintendent of the patrol the specific authority to classify and rank members of the patrol and to promote to a higher grade all members of the patrol; and that neither that section nor any other section of R.C. Chapter 5503 requires the superintendent of the patrol, or the Director of Highway Safety, to comply with the requirements of R.C. 124.23 and 124.31. The General Assembly has not manifested an intent that the general provisions of R.C. 124.23 and 124.31 should control the specific provisions of R.C. 5503.03.

Relative to the requirements of Section 10 of Article XV of the Ohio Constitution to the effect that all appointments and promotions in the civil service of the state shall be made according to merit and fitness, and that such must be ascertained "as far as practicable, by competitive examinations," we hold that such constitutional provision has not been violated by the procedures followed by appellees, state of Ohio or superintendent of the patrol.

Promotions in the patrol are based upon what is known as a forced choice personnel evaluation system, in which the patrolman's performance is described by selecting the descriptive phrases that most closely describe the patrolman being evaluated. A promotion selection panel composed of patrol officers recommends the person to the superintendent to be promoted.

The drafters of Section 10, Article XV of the Ohio Constitution had recognized that there would be circumstances where it might not be practicable to provide competitive examinations for appointments and promotions. The state argues, and we agree, that the highway patrol presents just such a state agency that involves employee advancement where a competitive examination policy would not be practicable. The responsibilities of state highway patrolmen are wide and varied; and a patrolman may be stationed in a variety of counties from Defiance in the northwest to Washington in the southeast, and from Hamilton in the southwest to Ashtabula in the northeast, and other counties within these outer limitations. Differing

demands upon patrolmen in these varied areas of policing responsibilities do indeed occasion and call for differing practical promotional considerations.

It is further contended by appellants that the procedure followed by the patrol for determining promotions does not comport with the constitutional requirement of Section 10, Article XV of the Ohio Constitution that "promotions * * * shall be made according to merit and fitness." In answer to this, the state points out that there was testimony before the trial court by Major John P. Gilmartin of the patrol that length of service was considered for promotional purposes, and that college education, special training, special schools, commendations and achievements were all taken into consideration during promotion review. The record also shows that then Major, now Lt. Colonel, Richard G. Grumney, who holds a Masters Degree from Ohio State University in public administration, specializing in the areas of counseling and test construction, testified that the forced choice test has been validated both as to content (job-relatedness) and concurrence (comparing results to external criteria). Lt. Colonel Grumney also stated that the forced choice system has been repeatedly validated and that as a testing system it is objective, non-biased, and proven reliable and practical. The opinion that this system has been validated was shared by Professor Donald T. Shanahan of the University of Texas, Director of the Southwestern Law Enforcement Institute.

We hold that there was sufficient evidence before the trial court to determine that the promotional procedure as followed by the State Highway Patrol was constitutionally valid and not contrary to law.

## II

As to the claim that the appellants are unlawfully being denied the right of the free use of the district headquarters bulletin boards for purposes of displaying information and materials of the Fraternal Order of Police, we hold, in the first instance, that the union, or members thereof, have no constitutional right, either under the First Amendment or Section 11 of Article I, to the unrestrained use of such billboards. The superintendent and the officer in charge of any given district patrol headquarters may reasonably control the use of such facilities, and by whom.

However, we need not decide whether the former prohibition was reasonable because here we find that the court of appeals was correct in holding this matter to be moot, since the superintendent in this regard currently allows these organizations to post notices and materials which are of interest to the members.

## III

Appellants argue that they should be compensated by the state for the period of time that is required for them to maintain their physical fitness in order to be in compliance with patrol physical fitness standards.

The physical fitness standards of the patrol are not remote unrelated

rules for the sound operation of this state policing force. The physical demands upon the state patrolmen are many. Not only is there the necessity for physical fitness in the normal police routines of highway traffic control, but also there are the more physically demanding duties involving confrontation with criminals operating intrastate or those who might be fleeing interstate. Additionally, there are the wide and varied and often physically taxing duties, including riot control among others, required of state patrolmen as set forth in R.C. Chapter 5503.

The need for the basic standards of maintaining physical condition and fitness for continuance of service in the patrol is obvious. Physical soundness of the patrolmen not only serves the state and its citizens well by way of having the officers fit to respond to a particular problem, but also at the same time serves the officers well in the sense of self-protection.

We hold, as did the court of appeals, that there are no constitutional infirmities in the rules and regulations of the superintendent that the patrolmen maintain a standard of physical fitness; and that it is not unreasonable that the patrolmen be required to maintain such fitness on their own time. We also hold that the state is not obligated to compensate the officers for their time in maintaining such required physical fitness.

## IV

Appellants' final proposition of law raises an issue which this court recently had occasion to address. It is argued by appellants that R.C. 4111.01 *et seq.*, the Ohio Minimum Fair Wage Standards Act, are controlling regarding the compensation for overtime hours worked by members of the State Highway Patrol. In *Meeks* v. *Papadopulos* (1980), 62 Ohio St. 2d 187 [16 O.O.3d 212], this court held by way of syllabus law:

"R.C. 4111.03 of the Ohio Minimum Fair Wage Standards Act does not require the payment of overtime compensation to any member of a police or fire protection agency working for an employer as defined in R.C. 4111.01(D), as such persons were not intended by the General Assembly to be employees within the meaning of R.C. 4111.01(E)(7)."

We hold that the law as pronounced in *Papadopulos* is equally controlling here as it relates to overtime claimed by these state patrolmen.

Based upon all of the foregoing, we affirm the judgment of the court of appeals in all respects.

*Judgment affirmed.*

CELEBREZZE, C.J., PATTON, SWEENEY, LOCHER, HOLMES, C. BROWN and KOEHLER, JJ., concur.

PATTON, J., of the Eighth Appellate District, sitting for W. BROWN, J.

KOEHLER, J., of the Twelfth Appellate District, sitting by assignment.