DURBIN, Appellant,

v.

OHIO STATE HIGHWAY PATROL, Appellee.■

[Cite as *Durbin v. Ohio State Highway Patrol* (1992), 83 Ohio App.3d 693.]

Court of Appeals of Ohio,
Franklin County.

Nos. 92AP–458 and 92AP–459.

Decided Nov. 17, 1992.

694

William P. Bringman Co., L.P.A., and William Paul Bringman, for appellant.

Lee Fisher, Attorney General, and Jeffrey R. Goldsmith, Assistant Attorney General, for appellee.

McCORMAC, Judge.

Plaintiff-appellant, Steven M. Durbin, was arrested on February 13, 1987, by members of defendant-appellee, Ohio State Highway Patrol, on the basis of an arrest warrant charging him with the rape of Marcianne Clark. Ultimately, appellant was acquitted of the charge. Appellant then filed two separate actions against appellee in the Court of Claims, alleging malicious prosecution, false arrest/false imprisonment, invasion of privacy, infliction of emotional distress, and civil rights violation under Sections 1983 and 1985, Title 42, U.S.Code. Appellant's constitutional claims were dismissed prior to trial and the matter proceeded to trial on appellant's common-law tort claims. At the close of appellant's evidence, the trial court sustained appellee's Civ.R. 41(B) motion to dismiss.

Appellant appeals from the dismissal of his tort claims and asserts the following assignment of error:

"The trial court erred in dismissing the second cause of action of the complaint and amended complaint pursuant to Rule 41(B)(2) of the Civil Rules."

In the early morning hours of February 13, 1987, Marcianne Clark was raped at gunpoint in the cab of a semi-truck on Interstate 77 outside Newcomerstown in Tuscarawas County. While receiving treatment at the Guernsey County Hospital, Clark was interviewed by Trooper Gary Gordon of the Ohio State Highway Patrol. The patrol assumed jurisdiction because the crime was committed on an interstate highway. Clark gave a description of the rapist and the tractor in which she was raped. She stated that the tractor was "bobtailed," *i.e.*, it was not pulling a trailer. As a consequence, Sergeant Thomas Carr caused an all-points bulletin to be issued.

In response to the bulletin, the Newcomerstown Police Department contacted the patrol to report that a truck meeting the description given had been seen earlier that evening at a Newcomerstown truck stop. An investigation revealed that the truck was owned by appellant and that he was a resident of Mount Vernon. Carr contacted the Mount Vernon police and requested that they determine if appellant and his tractor were in the area. Later that morning, the Mount Vernon police informed Carr that appellant was at the police station. Chief Bartlett of the Mount Vernon Police Department described appellant over the phone. The description matched that given by Clark to a sufficient degree that Carr and Gordon decided to travel to Mount Vernon to question appellant. Carr also contacted Ronald Collins, the Tuscarawas County Prosecutor, to inform him of their investigation. Collins informed Carr that he would advise appellee after he reviewed Clark's statement.

While on route to Mount Vernon, Carr and Gordon met Sergeant Russell Johnson. Johnson obtained copies of Clark's statement and appellant's registra-

tion for delivery to Collins. Johnson testified that he read Clark's statement before tendering it to Collins. After interviewing appellant and determining that he matched the description given by Clark, appellant, Carr and Gordon proceeded to a lumberyard where appellant's tractor was parked to conduct a search. Before leaving the Mount Vernon Police Department, the troopers telephoned Prosecutor Collins and confirmed that appellant matched the description given by Clark.

Carr and Gordon, accompanied by appellant, then went to search appellant's truck. After conducting their search, a telephone call was made to the troopers' district headquarters. They were informed that a warrant for appellant's arrest had been filed. The troopers acted upon the warrant and arrested appellant.

Appellant was held in the Knox County Jail pending a preliminary hearing. At the hearing held February 20, 1987, Clark was unable to identify appellant as the assailant and appellant was released. Thereafter, appellant filed his first action in the Court of Claims.

After the hearing, Carr and Gordon took Clark to where she was staying. They continued to question her about her inability to identify appellant. Shortly thereafter, Clark contacted appellee and indicated that she was certain that appellant was the man. Appellee turned this information over to the prosecutor, who continued the investigation. Eventually, appellant was indicted by the grand jury. His trial resulted in a verdict of acquittal, which precipitated the filing of the second complaint against appellee in the Court of Claims.

█ In order to prevail in an action based upon malicious prosecution, the plaintiff must establish that there existed:

" * * * (1) [M]alice in instituting or continuing the prosecution, (2) lack of probable cause, and (3) termination of the prosecution in favor of the accused. * * * " *Trussell v. Gen. Motors Corp.* (1990), 53 Ohio St.3d 142, 559 N.E.2d 732.

█ Appellant contends that the evidence does not support the trial court's conclusion that probable cause existed. Under Civ.R. 41(B)(2), the trial court is permitted to weigh the evidence and need not construe possible inferences in favor of the non-moving party. *Levine v. Beckman* (1988), 48 Ohio App.3d 24, 548 N.E.2d 267. Probable cause requires that the defendant must have a "reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the person accused is guilty of the offense charged * * *." *Portis v. TransOhio Savings Bank* (1988), 46 Ohio App.3d 69, 545 N.E.2d 923, paragraph three of the syllabus.

█ There was ample evidence to support a finding of probable cause. The victim gave a detailed statement describing the assailant and the tractor in which

she was raped. The troopers testified that both appellant and his truck matched the descriptions given. Clark's statement indicated that she removed paper towels from the tractor as she was exiting. Appellant's truck contained paper towels. There was evidence that a truck matching the description given by Clark was seen at a Newcomerstown truck stop during the relevant time period. Appellant's truck was found without a trailer, as Clark had described. The circumstances surrounding the arrest of appellant were sufficient to convince a reasonably cautious person that probable cause existed. Furthermore, the troopers were acting pursuant to an arrest warrant prepared by the Tuscarawas County Prosecutor and filed pursuant to his directive. Ohio law has long provided officers of the court with civil immunity when the officers are merely complying with an order of the court which appears valid on its face. *Wholesale Elec. & Supply, Inc. v. Robusky* (1970), 22 Ohio St.2d 181, 51 O.O.2d 240, 258 N.E.2d 432.

Appellant next argues that the arrest warrant was void because there was no probable cause for its issue. Appellant seems to be confusing the subtle distinctions between malicious prosecution and false arrest. In *Rogers v. Barbera* (1960), 170 Ohio St. 241, 10 O.O.2d 248, 164 N.E.2d 162, the Supreme Court stated:

" ' * * * A suit for false arrest or false imprisonment is the proper action where the aggrieved party is arrested without legal process, or under a void process; but where the process on which the arrest is made is regular on its face, but is sued out maliciously and without probable cause, the remedy is an action for malicious prosecution.' " *Id.* at 244, 10 O.O.2d at 249, 164 N.E.2d 164, quoting 22 American Jurisprudence 353, False Imprisonment, Sections 2 and 3.

The *Rogers* decision relied on *Brinkman v. Drolesbaugh* (1918), 97 Ohio St. 171, 119 N.E. 451, paragraph two of the syllabus, where the court held:

"False imprisonment *per se* is not concerned with good or bad faith, malicious motive or want of probable cause on the part of the prosecuting witness, or the officer causing the imprisonment. If the imprisonment was *lawful,* it is not the less lawful that any or all of the foregoing elements existed. These elements relate to an action of malicious prosecution, but are not essential to an action in false imprisonment."

Therefore, to maintain an action in false arrest or false imprisonment, the complainant must show that the warrant issued was void. This may be done by showing that, given the complaint and any affidavit included therewith, there was a lack of probable cause to issue the warrant. As we have previously determined, there did exist sufficient evidence to support a finding of probable cause.

■ Appellant next argues that the warrant was void because the affidavit of Sergeant Russell Johnson was insufficient. The complaint filed merely sets forth the elements of R.C. 2907.02(A)(2) with no other factual background. However, Johnson testified that, prior to signing the complaint, he did read Clark's statement. The statement is some fifteen pages long and is exacting in its detail. Furthermore, the complaint was compiled by the Tuscarawas County Prosecutor, who also had read the statement, as well as discussed the case with the investigating officers.

Crim.R. 4 provides that a complaint may be based upon hearsay. Johnson read the statement and, therefore, was sufficiently informed to swear out the complaint. The allegations contained in appellant's brief are unsupported speculations.

■ Appellant next argues that the arrest was unlawful because the state highway patrol had no authority to arrest him on private property without an order from the Governor. Appellant bases his contention on R.C. 5503.02, which provides in part:

"The superintendent or any patrolman may enforce the criminal laws on all state properties and state institutions, owned or leased by the state, and, when so ordered by the governor in the event of riot, civil disorder, or insurrection, may, pursuant to sections 2935.03 to 2935.05 of the Revised Code, arrest offenders against the criminal laws wherever they may be found within the state, if the violations occurred upon, or resulted in injury to person or property on, state properties or state institutions, or under the conditions described in division (B) of this section."

The courts of Ohio have not specifically construed the arrest powers of the State Highway Patrol in regard to the situation herein, *i.e.*, an offense committed on state property and an arrest by the patrol off that property. However, some insight is provided from the few cases that have addressed R.C. 5503.02.

In *State v. Kuno* (1976), 46 Ohio St.2d 203, 75 O.O.2d 239, 346 N.E.2d 768, the Supreme Court stated:

"Appellant emphasizes the latter part of this statute, urging that there was no riot or insurrection, nor any order of the Governor. This position ignores the fact that the violations occurred on state property (Interstate 80), and that the appellant was apprehended on the same state property. The patrolman was clearly within the terms of the first part of the language of R.C. 5503.02 quoted above. No order of the Governor was needed to allow arrest in this case." *Id.* at 205, 75 O.O.2d at 240, 346 N.E.2d at 770.

Appellant argues that *Kuno* stands for the proposition that a State Highway Patrol officer may not leave state property to make an arrest absent an order

from the Governor. However, *Kuno* does not address that issue and is not implied or express authority for that proposition.

In *Fraternal Order of Police v. State* (1983), 4 Ohio St.3d 28, 4 OBR 75, 446 N.E.2d 157, the court stated:

" * * * The patrol also has the authority to enforce the criminal laws of Ohio on all state properties and state institutions owned or leased by the state and, when ordered by the Governor in the event of a riot or insurrection, to assist the sheriff of a county or the chief executive of a city to enforce criminal laws within the area threatened by such riot, civil disorder, or insurrection. * * * Clearly, the General Assembly has determined that the patrol is to be more than a police force that enforces only traffic laws and auto registration laws of this state. Its name notwithstanding, the patrol possesses most of the power of any other police force in Ohio and, indeed, with more power in the event of a riot, insurrection or civil disorder." *Id.* at 30,. 4 OBR at 76, 446 N.E.2d at 159–160.

The first part of R.C. 5503.02 gives the Ohio State Highway Patrol a clear mandate to enforce criminal laws that occur on state property. No limitation in that power is enumerated. This grant of authority would be rendered largely meaningless if a trooper could not pursue a suspect once he had left the state highway or property. Enforcement must necessarily include the power to arrest a person stopped in hot pursuit, a power which other police officers possess. Appellant does not argue to the contrary, but points out that this was not a hot pursuit case.

The General Assembly in enacting R.C. 5503.02 appears to intend to impose a limit upon the arrest power of the State Highway Patrol off state property, even though the offense was committed on state property (other than when in hot pursuit), except in the event of riot, civil disorder or insurrection when ordered to do so by the Governor. Therefore, we conclude that the State Highway Patrol did not have the authority to arrest defendant on private property. However, even though the arrest warrant possessed by the patrol should technically have been served by a Mount Vernon officer, there was no damage caused thereby. The arrest occurred in Mount Vernon shortly after all involved had left the Mount Vernon Police Station. If the troopers had not made the arrest, a Mount Vernon officer, who could have been called to the scene in short order, would have. The same imprisonment would have resulted.

In his complaint filed in the Court of Claims, appellant also advanced causes of action based on intentional and negligent infliction of emotional distress. Appellant offers no argument in his brief addressed to those issues and, for that reason, they need not be discussed. App.R. 12(A). However, even if those issues are properly before this court, we find them meritless. There was no evidence of

intent to inflict harm on appellee's part, and the patrol's conduct was not outrageous. Thus, the tort of intentional or negligent infliction of emotional distress was not proved. See *Reeser v. Weaver Bros., Inc.* (1989), 54 Ohio App.3d 46, 560 N.E.2d 819; *Yeager v. Local Union 20* (1983), 6 Ohio St.3d 369, 6 OBR 421, 453 N.E.2d 666.

Appellant's assignment of error is overruled, and the judgments of the Ohio Court of Claims are affirmed.

*Judgments affirmed.*

TYACK and DESHLER, JJ., concur.