The consolidated appeals and cross-appeal stem from legal malpractice claims arising out of criminal proceedings. After serving approximately three years of a five-to-fifteen-year period of incarceration for the guilty plea convictions, appellant Joseph Halliwell, along with his wife, filed a complaint against the two attorneys who successively represented him. The trial court found the claims were barred by the one-year statute of limitations and awarded sanctions for maintaining the action. We affirm the trial court's judgment that the claims were barred by the statute of limitations, but vacate its award of sanctions. For simplicity, the parties shall be referred to by their proper names.
The prisoner, Joseph Halliwell, and his most recent victim, now his wife, Fay Halliwell, began this odyssey more than five and one-half years ago. Their complaint against attorneys Harvey Bruner and Fred Crosby, who successively represented Joseph Halliwell in various criminal proceedings, is as follows:
 3. On June 12-13, 1995, Plaintiff Joseph Halliwell was involved in an incident involving his fiance, Fay Drusinksy, who is now his wife, Fay Halliwell. At that time, Plaintiff was not related to Fay, but they were household members of each other.
 4. In that incident, Plaintiff was at a bar in Solon with Fay Drusinsky, where they had an argument; Plaintiff was intoxicated and struck Fay; Fay left to go home, at [address omitted]; Plaintiff called home to talk with Fay, but she was not there; Plaintiff left threatening messages on their answering machine.
 5. Plaintiff then came home, but found that he left his house keys on the dining room table, so he broke into the house. Plaintiff checked the answering machine and saw that Fay had removed the tape containing the threatening messages; he then wrote threatening messages on the wall and strew furniture and belongings throughout the rooms, and damaged some property belonging to Fay.
 6. Plaintiff was charged in Bedford Municipal Court with Domestic Violence for striking a household member, Fay Drusinksy. Plaintiff was represented by counsel (neither of Defendants herein) at that time.
 7. Plaintiff plead [sic]guilty in the Bedford Municipal Court, on June 13, 1995, to the charge of Domestic Violence, a misdemeanor of the first degree, and was sentenced to probation.
 8. Following resolution of the Domestic Violence charge, the prosecuting attorney presented further charges before the Grand Jury.
 9. Defendant Bruner, on or about June 27, 1995, and thereafter, accepted Plaintiff as a client, and Plaintiff consulted with Defendant Bruner as his attorney, in the criminal defense of charges of Aggravated Burglary, a felony of the first degree, Vandalism, a felony of the fourth degree, and Aggravated Menacing, a misdemeanor of the first degree, which were brought against Plaintiff in Court of Common Pleas, Cuyahoga County, Ohio, Case No. CR-325899, in a Grand Jury indictment filed on July 17, 1995.
 10. Defendant Bruner was paid the sum of Eleven Thousand Five Hundred Dollars ($11,500), for the legal services he rendered.
 11. Defendant Bruner negotiated with members of the Cuyahoga County Prosecuting Attorney's office and arranged a plea bargain, whereby Plaintiff would plead guilty to a reduced charge of Burglary, a felony of the second degree, Vandalism, a felony of the fourth degree, and Aggravated Menacing, a misdemeanor of the first degree, in return for the prosecution's recommendation of probation, and provided further that Plaintiff move out of Cuyahoga County, Ohio.
 12. Although Plaintiff never spoke with the Cuyahoga County Assistant Prosecutors, nor was he directly involved in any of the negotiations, Defendant Bruner allegedly related to Plaintiff all of the details of the plea bargain agreement to secure Plaintiff's approval and induce his plea.
 13. In order to induce Plaintiff to plead guilty to the charges, Defendant Bruner represented to Plaintiff that the Prosecutor was going to recommend probation, that Plaintiff would be required to move out of Cuyahoga County, Ohio, and that, although the Judge was not bound by the prosecutor's recommendation, there was a 98% chance of Plaintiff receiving probation, with the small chance being that he would have to serve some local time in the Cuyahoga County jail.
 14. Based upon the plea bargain agreement, as related and represented to Plaintiff by Defendant Bruner, Plaintiff plead [sic] guilty to Burglary, R.C. Section 2911.12, Vandalism, R.C. Section 2909.05, and Aggravated Menacing, R.C. Section 2903.21, on September 27, 1995, before Judge William J. Coyne of the Cuyahoga County Court of Common Pleas.
 15. Plaintiff's criminal case was scheduled for sentencing pending the completion of a presentence investigation report.
 16. On December 8, 1995, Plaintiff and his attorney, Defendant Bruner, appeared in the court room of Judge Coyne for sentencing. Prior to the actual sentencing proceeding in the court room, Defendant Bruner and the prosecuting attorney met with Judge Coyne in his chambers. At that point, Defendant Bruner learned that the prosecutor's office not only was not going to recommend probation, but instead was going to seek the maximum possible penalty of imprisonment under the law.
 17. Defendant Bruner and the judge and prosecutor then entered the court room, and thereupon, sentencing was held.
 18. The prosecuting attorney recommended that the judge sentence Plaintiff to the maximum penalty.
 19. Judge William J. Coyne sentenced Plaintiff to a term of four (4) to fifteen (15) years on the Burglary charge, with six (6) months concurrent on the Aggravated Menacing charge, both of which would be consecutive to a one (1) year prison term on the Vandalism charge. Therefore, Plaintiff was sentenced to a term of five (5) to fifteen (15) years, the maximum penalty.
 20. On or about December 10, 1995, Defendant Fred C. Crosby accepted Plaintiff as his client, and Plaintiff consulted with Defendant Crosby as his attorney, for further advice and representation in regards to his criminal defense. Defendant Crosby was paid Fifteen Thousand Eight Hundred Eighty-Seven Dollars ($15,887) for his services.
 21. Defendant Crosby filed a motion, on December 13, 1995, with Judge William J. Coyne to request that Plaintiff's guilty plea be vacated or for the court to reconsider its sentence.
 22. An evidentiary hearing was held on the motion to vacate plea on February 15, 1996.
 23. On or about March 5, 1996, Judge William J. Coyne overruled the motion to vacate the plea/reconsideration of sentence and a motion for the judge to set forth his findings of facts and conclusions of law.
 24. Defendant Crosby then filed a notice of appeal in the trial court, appealing the denial of the motions to vacate plea, for reconsideration, and for findings and conclusions, on March 15, 1996.
 25. In that appeal, Defendant Crosby raised the issue of abuse of discretion on the part of the trial judge in overruling the motion to vacate plea, and included the issue of the missing element, as a matter of law, in the Burglary charge, to wit: that one cannot be found guilty of trespassing upon the property of another, when one has a present possessory interest in that property. This issue was not raised or asserted in the trial court by Defendant Bruner.
 26. On December 19, 1996, the Court of Appeals, Eighth Appellate District, Cuyahoga County, Ohio, in Case No. 70368, denied Plaintiff's appeal on its merits.
27. No further appeal was attempted or taken.
(Emphasis on certain dates added.)
Joseph Halliwell, who had by this time already served more than one year of imprisonment, served more than another year before undertaking any effort to obtain release. On November 13, 1997, Bruner filed a motion in the trial court for supershock probation, which motion he withdrew shortly thereafter on January 8, 1998.[1]
Joseph Halliwell ultimately retained a new, third attorney, Eugene Lucci, who initiated a series of legal actions. On July 8, 1998 Lucci filed his own motion for supershock probation in Halliwell's criminal case, which was denied on August 4, 1998. Approximately two months later, on September 25, 1998, Lucci, as counsel for the Halliwells, filed the civil malpractice complaint against Joseph Halliwell's former attorneys Bruner and Crosby. The malpractice complaint, which alleged various acts of negligence in the defense by Bruner and in post-conviction proceedings by Crosby, sought more than $5,000,000 in damages against them jointly and severally.
After filing the malpractice complaint in the case at bar, Lucci initiated a series of proceedings which occurred simultaneously and appear to have exhausted Halliwell's claims for relief from his conviction and sentence. The Ohio Supreme Court denied his request for a delayed appeal from the opinion of this court, issued almost two years earlier, which affirmed the denial of his motion to vacate his guilty plea. State v. Halliwell (1998), 84 Ohio St.3d 1428. This court denied as groundless his App.R. 26(B) application for reopening of his appeal from the denial of his motion to vacate his guilty plea. State v. Halliwell, Cuyahoga App. No. 70369, unreported, Motion No. 00187 (Jan. 28, 1999). The trial court denied his petition for post-conviction relief as untimely filed, which this court subsequently affirmed in State v. Halliwell (Aug. 9, 1999), Cuyahoga App. No. 75986, unreported.[2]
During the course of the proceedings in the civil malpractice action in the case at bar, Crosby filed a motion to dismiss the complaint against him. Crosby's motion to dismiss argued that paragraph 26 of the complaint revealed that the claims against him were barred by the one-year statute of limitations. Crosby asserted that any claims against him arose on December 19, 1996 when this court issued its opinion affirming the trial court's denial of his motion to vacate Joseph Halliwell's guilty plea or to reconsider the sentence imposed on him. State v. Halliwell (Dec. 19, 1996), Cuyahoga App. No. 70369, unreported. Crosby attached other exhibits to the motion which showed that the action was untimely filed.
The Halliwells filed a lengthy brief in opposition, supported by a fifteen-page affidavit of Joseph Halliwell. In the affidavit, Halliwell reiterated his complaint in greater detail and recounted an extensive history of approximately one dozen prior criminal charges, convictions, and incarcerations including at least one for burglary as in the case at bar but argued he did not know of any possible legal malpractice until he contacted his current attorney in 1998.[3]
Crosby's reply brief emphasized that the time for bringing legal malpractice claims begins to run when the client knows or in the exercise of reasonable diligence should have known that any malpractice was committed. He argued that the cognizable event which triggered the statute of limitations in this case was the adverse decision of this court which rejected his attempts to obtain Halliwell's release from prison. The trial court subsequently granted his motion to dismiss.
After completing discovery, Bruner filed a motion for summary judgment on the claims against him. Bruner's motion was supported by a large body of evidence comprised of thirteen exhibits, including deposition testimony of the Halliwells, transcripts from the Bedford Municipal Court proceedings and from the subsequent guilty plea and sentencing hearings in the common pleas court, as well as a brief and this court's opinion in State v. Halliwell (Dec. 19, 1996), Cuyahoga App. No. 70369, unreported. He also attached a copy of Fay Halliwell's grievance which twice alleged that Bruner was negligent.[4] In addition to an affidavit of Bruner, he also filed copies of correspondence to him from Joseph Halliwell and from the Halliwells to the trial judge, as well as a copy of the Halliwells' expert report.
Bruner argued that (1) the claims against him were barred by the one-year statute of limitations, (2) Halliwell was judicially estopped from claiming his innocence because he pleaded guilty to burglary, and (3) Halliwell was collaterally estopped from arguing that Bruner committed malpractice, because this court stated that he had competent counsel and rejected his claim that Bruner provided ineffective assistance of counsel.
The Halliwells filed a brief in opposition which largely repeated the arguments they had made in their opposition to Crosby's motion to dismiss. They attached a substantially identical fifteen-page affidavit of Joseph Halliwell and a five-page affidavit from Fay Halliwell, a copy of their expert's report, deposition testimony of Crosby and Bruner, a letter from Bruner to Fay Halliwell, and materials from the bar association which rejected the grievance against Bruner.
Fay's affidavit stated that in 1996 and 1997 she contacted at least three additional attorneys before retaining her current counsel. (Id. at para. 25.) She argues that her 1995 grievance against Bruner was really a fee dispute. The Halliwells continue to argue that until after they retained Lucci as counsel in early 1998 they had no idea that any malpractice may have occurred and that they did not terminate their attorney-client relationship with either Bruner or Crosby until they announced that they did so in January 1998.
Bruner's reply brief argued that, contrary to the Halliwells' argument, the commencement of the statute of limitations does not require a formal legal opinion which utters the word malpractice after it presents a thorough analysis of all the facts. Rather, the time period begins to run when a cognizable event occurs that puts the client on sufficient notice that he should have known, in the exercise of reasonable diligence, that malpractice may have occurred to warrant further investigation. Bruner argued that this occurred in December of 1995 and in no event later than March 15, 1996 when the Halliwells filed their brief[5] asserting that Bruner had provided ineffective assistance of counsel.
The trial court granted Bruner's motion for summary judgment. The Halliwells timely appealed from the trial court's order granting Crosby's motion to dismiss and Bruner's motion for summary judgment in Court of Appeals Case No. 76933.
Bruner and Crosby thereafter filed motions for sanctions. They argued that the Halliwells' complaint never should have been filed and should have been dismissed when they raised their affirmative defense that the action was barred by the statute of limitations. Following additional briefing by the parties, the trial court granted sanctions against Lucci, the Halliwells' new counsel. The trial court ordered him to pay Crosby $3,750 and to pay $3,750 for the defense of Bruner. Bruner was ordered to receive his malpractice insurance deductible and the balance was ordered to be paid to his counsel.
The Halliwells and Lucci timely appeal from the trial court's order granting sanction in court of appeals Case No. 77487. They argue that the trial court improperly awarded any sanctions. Bruner filed a cross-appeal in Case No. 77487, arguing that the award of $3,750 was too modest and should also have been entered against Fay Halliwell. This court consolidated the two appeals from the judgment against the Halliwells on their malpractice claims in Case No. 76933 and from the subsequent award of sanctions in Case No. 77487 for hearing and disposition.
The Halliwells' sole assignment of error in Case No. 76933 follows:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANTS, AS A MATTER OF LAW, WHEN IT GRANTED DEFENDANT CROSBY'S MOTION TO DISMISS AND DEFENDANT BRUNER'S MOTION FOR SUMMARY JUDGMENT.
This assignment lacks merit.
The Halliwells argue that the trial court improperly entered judgment against them on their complaint for malpractice. They argue, in a brief jointly discussing the claims against Bruner and Crosby, that their claims were timely filed and were otherwise sufficient to withstand pre-trial judgment against them.
The parties agree that R.C. 2305.11(A) establishes a one-year statute of limitations for claims of legal malpractice, but dispute when the period commenced to run in the case at bar. It is well established that a malpractice action
 accrues and the statute begins to run on the later of two possible dates: (1) when a cognizable event where the client discovers, or [in the exercise of reasonable diligence] should have discovered, that the injury is related to the attorney's act or omission and the client is put on notice of a need to pursue possible remedies against the lawyer, or (2) when the attorney-client relationship for the particular transaction or undertaking at issue in the putative suit terminates.
Thompson v. Karr (N.D.Ohio. 1998), 4 F. Supp.2d 731, 736 (citing Zimmie v. Calfee, Halter and Griswold (1989), 43 Ohio St.3d 54, 58.) The parties' dispute focuses principally on when the cognizable event occurred in the case at bar.[6]
 Bruner
The trial court properly granted summary judgment in favor of Bruner. It is well established that summary judgment is warranted when, after the evidence is viewed in the light most favorable to the non-moving party, there is no genuine issue as to any material fact, reasonable minds can come to but one conclusion, and the moving party is entitled to judgment as a matter of law. Civ.R. 56(C); see also Vahila v. Hall (1997),77 Ohio St.3d 421, 428-430.
To support their argument to the contrary, the Halliwells make two main arguments, which we find unpersuasive. They argue that the trial court is required to view the evidence in the light most favorable to them. We agree with this general principle and that the trial court cannot consider the credibility of their affidavits. Despite their denial of any knowledge about the alleged malpractice until Lucci offered his formal legal opinion in May 1998, however, the governing standard is whether in the exercise of reasonable diligence they should have known about the alleged malpractice earlier.
They rely heavily on an analogy to medical malpractice cases when medical patients may have no inkling about either the existence or cause of a condition until they are diagnosed or obtain an opinion from a medical professional. Even if the analogy were apt in the case at bar, however, their argument does not carry the day even in the medical context.
Burris v. Romaker (1991), 71 Ohio App.3d 772, provides an example that is instructive in the case at bar. The mother of a child who died at the age of three sought to recover for various torts on the grounds that the child was allegedly injured by an improper forceps delivery. Although she obtained an opinion within the applicable limitations periods from a physician that such a delivery occurred, her claims were nevertheless barred because she had sought out the advice of an attorney shortly after the birth. Knowledge of a potential problem starts the statute to run, even when one does not know all the details.
The Halliwells argue that they consulted with at least four attorneys before retaining Lucci as their counsel and discovering that defendants committed malpractice. Contrary to their argument, however, consulting with an attorney itself indicates a cognizable event. Romaker held that the statute of limitations commences, even when the party receives an erroneous opinion from an attorney that no (medical) malpractice occurred. Id. at 773. In short, the commencement of the statute of limitations does not depend on the validity of the opinion received when one investigated potential malpractice.
Under the circumstances, the trial court properly found that the claims asserted against Bruner were barred by the statute of limitations on any or all of the following bases: (1) by December 10, 1995, when he first consulted another attorney e.g., id.; (2) by December 30, 1995, when Fay Halliwell filed a grievance with the local bar association, twice alleging that Bruner was negligent e.g., Barna v. Joseph (June 22, 1989), Cuyahoga App. No. 56806, unreported at p. 4; Brown v. Johnstone (1982), 5 Ohio App.3d 165, 167; (3) by March 15, 1996, when the Halliwells' brief alleging that Bruner provided ineffective assistance of counsel was filed in this court on direct appeal from the denial of his motion to vacate his plea or reconsider his sentence. E.g., Belcher v. Lesley (Dec. 12, 1995), Franklin App. No. 95APE05-662 and 95APE05-663, unreported at pp. 3-4.
 Crosby
The trial court also properly granted Crosby's motion to dismiss the complaint against him. The Halliwells' brief on appeal does not delineate between the judgments for the two defendants.
The standard for granting summary judgment under Civ.R. 56(C), however, is significantly different from that governing the dismissal of a complaint for failure to state a cause of action under Civ.R. 12(B)(6). E.g., Teichman v. Weltman (May 12, 1996), Cuyahoga App. Nos. 69003, 69005 and 69006, unreported at p. 3; Moran v. Cleveland (1989),58 Ohio App.3d 9, 10. Unlike in the context of summary judgment, when considering a motion to dismiss, the court may not consider evidentiary materials beyond the face of the complaint.[7]
As noted above, in the case at bar, the Halliwells' complaint specifically alleged the December 19, 1996 date on which this court of appeals rejected the arguments raised by Crosby when seeking to vacate Halliwell's guilty plea or reconsider his sentence in State v. Halliwell (Dec. 19, 1996), Cuyahoga App. No. 70369, unreported. (Complaint Para. 26.) The face of the Halliwells' complaint shows that they did not file their malpractice claims until almost two years later, on September 25, 1998.
This court has already held that the date of announcement of an adverse decision may itself constitute a sufficient cognizable event to trigger the commencement of the statute of limitations on claims that the attorney committed malpractice in litigating the claims. Wozniak v. Tonidandel (1997), 121 Ohio App.3d 221, 226. Under the circumstances, Joseph Halliwell's allegations of what occurred during his plea and sentencing, coupled with this court's opinion in State v. Halliwell (Dec. 19, 1996), Cuyahoga App. No. 70369, unreported, was sufficient to trigger the commencement of the statute of limitations on these claims.
Accordingly, the Halliwells' sole assignment of error in Case No. 76933 is overruled.
Finally, the parties appeal and cross-appeal from the trial court's sanction award in Case No. 77487. Because they raise related issues, we shall address their respective arguments together.
Lucci and the Halliwells raise the following sole assignment of error:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF PLAINTIFFS AND PLAINTIFFS' COUNSEL AND ABUSED ITS DISCRETION IN GRANTING DEFENDANTS' MOTIONS FOR SANCTIONS AND AWARDING ATTORNEY FEES AND COSTS IN THE SUM OF $3,750 EACH TO DEFENDANTS AND DEFENDANT BRUNER'S COUNSEL.
Bruner, in response, raises the following assignments on cross-appeal:
 THE TRIAL COURT ERRED BY FAILING TO SANCTION THE HALLIWELLS PERSONALLY FOR THE FILING OF THEIR FRIVOLOUS COMPLAINT.
 THE TRIAL COURT ERRED BY FAILING TO SANCTION THE HALLIWELLS' ATTORNEY IN AN AMOUNT THAT REPRESENTS REASONABLE ATTORNEY FEES INCURRED BY ATTORNEY BRUNER.
Because we find that the underlying award of sanctions was not warranted, we vacate the award.
We believe that this case involved colorable claims of arguable legal merit. The mere fact that the claims were unsuccessful is not enough to warrant sanctions. See e.g., White v. Soo (1995), 65 Ohio App.3d 731, 733
(assertion of claim that was previously litigated and dismissed with prejudice does not in and of itself demonstrate as a matter of law that the plaintiff acted in bad faith or raised a frivolous claim.) The case at bar turned on what a person in the exercise of reasonable diligence should have known for purposes of applying the statute of limitations. Although final judgment was warranted in favor of the defendants for the reasons stated above, there was not much authority before the case at bar applying these concepts in the context of representation in criminal litigation. Asserting and maintaining the claims under such circumstances was not sufficient to warrant the imposition of sanctions.
Accordingly, the sole assignment of error on appeal is sustained and the two assignments of error on cross-appeal are overruled.
In summary, the judgment of the trial court against the Halliwells on their complaint is affirmed. The trial court's subsequent judgment awarding sanctions is vacated.
Judgment accordingly.
It is ordered that appellees recover of appellants their costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
ANNE L. KILBANE, J., and JAMES M. PORTER, J., CONCUR.
[1] We note that the Halliwells raised no claim of malpractice concerning the motion for supershock probation. (Brief in Opposition to Summary Judgment at p. 36.)
[2] Material in the record also indicates that Joseph Halliwell's subsequent petition for a writ of habeas corpus in the United States District Court for the Northern District of Ohio was denied. Halliwell v. Christine Money, Warden (Feb. 17, 2000), Case No. 1:99CV2019.
[3] The transcript of Halliwell's sentencing hearing reveals that he had two prior burglary convictions and one prior trespass conviction. In State v. Halliwell (Dec. 19, 1996), Cuyahoga App. No. 70369, unreported, this court specifically noted that these convictions helped Halliwell understand the burglary charge in the underlying criminal case. Id. at p. 3.
[4] The grievance was filed with a local bar association on December 30, 1995, and raised many of the same claims asserted in the case at bar. The grievance form also specifically stated that Bruner's representation had been terminated by that date.
[5] The appellate brief in State v. Halliwell (Dec. 19, 1996), Cuyahoga App. No. 70369, unreported, asserted as an issue presented that APPELLANT RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL. (Id.at p. iv.) Joseph Halliwell's argument that Bruner provided ineffective assistance of counsel was asserted in his brief at pp. 13-16.
[6] The Halliwells also contend that under the continuous representation doctrine the time should be tolled and the termination of the attorney-client relationship should not be deemed to have occurred until they formally stated in January 1998 that such relationship was terminated with the defendants. The only case they cited involves representation for a business transaction with no readily identifiable boundaries rather than for discrete litigation in separately identifiable proceedings as in the case at bar. Invoking this doctrine under these circumstances would completely alter the nature of the parties' agreement.
[7] The Halliwells apparently request that this court consider the evidence attached to the parties' briefs concerning dismissal. Even if we were inclined to indulge this request, however, the evidence attached to Crosby's motion, authenticated by his reply brief, demonstrates that their claims lack merit. Attached to his motion were copies of (1) his agreement to represent Halliwell on only the appeal from the denial of the motion to vacate the guilty plea, (2) a January 17, 1997 letter informing Halliwell of the deadline to appeal to the Supreme Court after this court rejected his arguments, (3) Halliwell's letter post-marked February 27, 1997 declining to pursue further appeals, and (4) a June 2, 1997 request to Fay Halliwell for final payment, which was subsequently made. All of these indicate the commencement of the statute of limitations more than one year before September 25, 1998.