REESER ET AL., APPELLEES AND CROSS-APPELLANTS, *v.* WEAVER BROTHERS, INC., APPELLANT AND CROSS-APPELLEE.

(No. 1215—Decided May 11, 1989.)

*Stephen E. Klein* and *Irving I. Saul,* for appellees and cross-appellants.
*Neil F. Freund,* for appellant and cross-appellee.

WILSON, J. This appeal arises out of a jury verdict in the Darke County Court of Common Pleas against defendant Weaver Brothers, Inc. and in favor of the plaintiffs, Treva Reeser and the estate of Paul Reeser, in the amount of $200,000 as a result of the defendant's alleged polluting of the defendant's fishing lake.

In summary, the facts are as follows: The plaintiffs dammed up a county drainage ravine in 1956 and 1964 to make two lakes. The lakes were stocked with fish and people paid to camp and fish on the shores of the lakes while a bait shop on the property sold supplies to the fishermen. In 1983, the defendant began constructing three large chicken barns for egg production on its farmland. The defendant's land is directly upstream in the watershed area supplying the plaintiff's lakes. Three other farms are also upstream within the same watershed.

In 1984, the defendant negotiated a settlement to a then pending lawsuit brought by plaintiffs and other area farmers. The settlement contract called for the plaintiffs and farmers to drop that lawsuit in exchange for the defendant's promise to abide by the terms of an Ohio Environmental Protection Agency ("EPA") permit to install the three chicken houses.

In June 1986, all the fish in the ravine lakes died. The lakes were mucked up with floating scum from within the watershed. Some of this scum was seen coming out of a drainage tile that ran through the defendant's property. Extensive tests concluded that the lakes had been depleted of oxygen. The scum was one of many potential sources of the oxygen depletion evinced at the trial. Other sources included increases in the amount of silt, copper, phosphorous and organic materials making up the scum. This suit was brought because the plaintiffs believe that the defendant's negligence or failure to abide by the permit to install resulted in pollution entering the lakes, which in turn caused the fish to die.

The plaintiffs' initial complaint alleged intentional, reckless or negligent polluting, breach of contract, nuisance, and violations of the pollution laws, R.C. 6111.01 *et seq.* Damages requested by the plaintiffs included lost profits from the fishing lakes, damage to the lakes and emotional distress to the plaintiffs. The court granted the defendant's motion to dismiss the count alleging violations under R.C. 6111.01 *et seq.* for lack of a private cause of action. The court denied a motion by the defendant for summary judgment as to the remaining claims. At the end of the plaintiffs' case in chief, the court directed a verdict in favor of the defendant on intentional and reckless polluting. At the end of all the evidence, the court directed a verdict in favor of the defendant for breach of contract.

Only the claims of negligence and nuisance went to the jury. These two claims were submitted to the jury on two separate forms. An interrogatory concerning causation was placed on the form concerning negligence over objection of the defendant. The defendant requested that only one jury form

be used for both claims. The jury returned the completed verdict form finding nuisance but did not fill out the form regarding the negligence claim or fill out the interrogatory on causation on that form. The defendant did not object to the jury's failure to complete the negligence form before the trial court dismissed the jury. Soon thereafter, the defendant moved for a JNOV, a new trial and for remittitur, but the court denied all three motions.

The defendant has brought this appeal raising eight assignments of error from the trial court's judgment and that court's denial of various motions. The plaintiffs raise one assignment on cross-appeal from the trial court's failure to hold a hearing on prejudgment interest.* * *■

The second assignment of error states:

"The trial court erred in not granting defendant's motion for judgment notwithstanding the verdict on the basis that the jury failed to find the prerequisite finding of negligence."

Both sides agree that a necessary element for a finding of a qualified nuisance is negligence. The defendant argues that because the jury filled out the verdict form finding nuisance but left the negligence form blank that the jury did not find the requisite element of negligence. The defendant did not claim that the verdict results were inconsistent at the time it moved for its JNOV. At that time it only claimed that reasonable minds could come to one conclusion, that being for the defendant. Though it is raised on appeal, the inconsistent verdicts argument was not raised below, so we need not address it.

To determine if the trial court

should have granted a JNOV we must ask whether reasonable minds could have only come to one conclusion, that being for the defendant. We think not. The testimony of one expert was that the only upstream farm capable of generating sufficient quantities of the organic material found in the lake, which contributed to the fish kill and lake damage, was that of the defendant. There was also testimony that chicken manure and feathers were found in the drainage tile emptying into the lake. There was testimony that the silt alone would not have killed the fish for ten to thirty years. The credibility of this evidence was a question of fact upon which reasonable minds could disagree. Therefore, it was a proper question for the jury.

The trial court properly denied the defendant's motion for judgment notwithstanding the verdict.

The second assignment of error is overruled.

### III

The third assignment of error states:

"The trial court erred in failing to either grant summary judgment or direct a verdict in favor of defendant on the issue of causation."

The standard for the granting of summary judgment is fully stated at Civ. R. 56 (C). One thing that standard requires is that there must be no question as to any material fact. In our case, the defendant denied that it caused the pollution while the plaintiffs presented circumstantial evidence which said that the defendant was the only one capable of producing sufficient quantities of the organic material found in the lake, which material contributed to the fish kill and to the lake damage. This is not a *res ipsa loquitur* argument as the defendant implies in its brief. See *Westinghouse Electric Corp.* v. *Dolly Madison Leasing &*

*Furniture Corp.* (1975), 42 Ohio St. 2d 122, 71 O.O. 2d 85, 326 N.E. 2d 651. This does not create an inference upon an inference. The plaintiffs state that only the defendant could have caused the pollution and the defendant denies this. This is a question of fact, sufficient to overcome a motion for summary judgment. Therefore, summary judgment was properly denied.

To direct a verdict, the standard fully stated at Civ. R. 50(A)(4) requires that we construe the evidence most strongly in favor of the party against whom the action is directed and still be able to find that reasonable minds can come to only one conclusion, that being in favor of the movant. In the present case, the determination of who was capable of committing the nuisance, where the pollution came from and what killed the fish was before the jury. Reasonable minds could construe the facts against the defendant on these issues. Therefore, directing a verdict would have been improper.

The third assignment of error is overruled.

### IV

Because our decision on the fifth assignment of error will affect our decision on the fourth, we will discuss the fifth assignment of error out of order. The fifth assignment of error states:

"The trial court erred in failing to grant a directed verdict on the claim for negligent infliction of severe emotional distress or judgment notwithstanding the verdict."

We agree. The trial court directed a verdict in favor of the defendant at the end of the plaintiffs' case in chief on the issue of intentionally or recklessly damaging the plaintiffs or their property. By eliminating the intentional and recklessness elements, the ability to recover for intentional infliction of emotional distress was also

eliminated. The only emotional distress claim remaining before the court then became a claim for negligent infliction of emotional distress.

Traditionally, no cause of action existed for negligent infliction of emotional distress. See *Miller* v. *Baltimore & Ohio Southwestern R.R. Co.* (1908), 78 Ohio St. 309, 85 N.E. 499. However, recently, the Supreme Court of Ohio has loosened its grip on that strict limitation and the court has allowed recovery for negligently inflicted emotional distress where one witnessed an accident of some type and one appreciated the peril involved. See *Schultz* v. *Barberton Glass Co.* (1983), 4 Ohio St. 3d 131, 4 OBR 376, 447 N.E. 2d 109; *Paugh* v. *Hanks* (1983), 6 Ohio St. 3d 72, 6 OBR 114, 451 N.E. 2d 759; and *Binns* v. *Fredendall* (1987), 32 Ohio St. 3d 244, 513 N.E. 2d 278. The Supreme Court has recently also allowed recoveries for negligently inflicted emotional distress in the context of workers' compensation claims. These recoveries have been based upon the legislative intent of the workers' compensation statutes and the inability of the distressed parties to leave their employment in an effort to abate future distress. See *Village* v. *General Motors Corp.* (1984), 15 Ohio St. 3d 129, 15 OBR 279, 472 N.E. 2d 1079, and *Ryan* v. *Connor* (1986), 28 Ohio St. 3d 406, 28 OBR 462, 503 N.E. 2d 1379.

However, the recent extensions do not extend recovery to one suffering emotional distress after witnessing the negligent damaging of property over a period of time arising out of the ongoing negligence of a defendant. If the legislature or the Supreme Court wish to extend recovery for the negligent infliction of emotional distress into such areas, that is their prerogative. Until such time, no recovery is available and it was error for the trial court to deny a directed verdict in favor of the defendant on this issue. Since we cannot determine what portion of the damages awarded by the jury, if any, constituted emotional distress, we must remand this matter to the trial court for a new trial on the issue of damages.

The fifth assignment of error is sustained.

The fourth assignment of error states:

"The trial court erred in refusing to grant a directed verdict in favor of defendant on issues of damages to real property."

The defendant alleges that the failure to provide evidence of the value of the property before and after the pollution events precluded the plaintiffs from recovery for damages to their real property. Defendant also claims that one witness, a Dr. Hayden, was not qualified to testify as to the cost of repairs.

Even if the defendant is correct in these assertions, the inability to calculate the damages will not preclude recovery once the right to damages is determined. *Pennant Mouldings, Inc.* v. *C & J Trucking Co.* (1983), 11 Ohio App. 3d 248, 11 OBR 374, 464 N.E. 2d 175, and *Accurate Die Casting Co.* v. *Cleveland* (1981), 2 Ohio App. 3d 386, 2 OBR 459, 442 N.E. 2d 459. Since we are already remanding this matter to the trial court on the issue of damages, the sufficiency of the prior evidence of damages has become a moot point. We would like to offer some guidance to the trial court, but we would be going beyond the scope of this appeal. Traditional damage rules limit the damages recoverable for temporary damage to real property to the cost of repair as limited by the difference between the market value of the property before the injury and the market value of the property after the injury. This rule, however, is not hard and fast and may not apply in the instant case. See *Denoyer* v. *Lamb* (1984), 22 Ohio App.

3d 136, 22 OBR 375, 490 N.E. 2d 615. Repair costs in *Denoyer* were limited only by the reasonable cost to return the property to its preexisting condition. Any statement about the applicability of the above cases, to the case at hand would be beyond the scope of this appeal.

As a result of being rendered moot by our answer to the fifth assignment of error, the fourth assignment of error is overruled.

\* \* \*

## IX

The plaintiffs raised one assignment of error on cross-appeal:

"The trial court erred in overruling plaintiffs' motion for prejudgment interest."

The plaintiffs complain that they were entitled to an evidentiary hearing pursuant to R.C. 1343.03(C) before the trial court could overrule their motion for prejudgment interest. The trial court expressed its agreement after the notice of appeal had already been filed. The defendant agreed. So do we. A hearing must be held on remand pursuant to the statute.

The plaintiffs' assignment of error on cross-appeal is sustained.

Having sustained the defendant's fifth assignment of error and the plaintiffs' sole assignment of error on cross-appeal and having overruled all other assignments of error, we affirm the decision of the trial court as to liability and reverse and remand solely on the issues of damages and prejudgment interest.

*Judgment accordingly.*

GRADY, J., concurs.

BROGAN, J., concurs separately.

BROGAN, J., concurring separately. I concur in the opinion of my colleagues that the evidence presented by the plaintiffs was sufficient for the jury to infer that the defendant negligently polluted the plaintiffs' fishing lakes. I differ, however, in finding that the plaintiffs had not presented sufficient evidence to recover for a negligent infliction of emotional stress claim under *Schultz* and *Paugh, supra.* I believe a reasonable jury could have found that the defendant should have foreseen that polluting the fishing lakes could cause the Reesers to suffer serious emotional stress. The lake provided their livelihood, and its destruction could reasonably cause them serious emotional distress.

I agree, however, with the appellant's argument that the trial court's permitting the economist, Dr. Stanley V. Smith, to testify on the economic value of that distress was prejudicial error. *Paugh* v. *Hanks, supra.*

I also believe the court erred in permitting Dr. Hayden to testify on the cost of excavating the lake. This testimony was rank hearsay and denied the defendant the right of testing the testimony by cross-examination.

Normally, the cost of restoration of property including its loss of use may not exceed the market value of the property itself. Since there was no testimony on the fair market value of the lake property, it was error for the jury to consider the cost of excavation without reference to its value. For these reasons, I concur in the remand of this matter for a further trial on the issue of damages.