BURRIS et al., Appellants,

v.

ROMAKER et al., Appellees.

[Cite as *Burris v. Romaker* (1991), 71 Ohio App.3d 772.]

Court of Appeals of Ohio,
Allen County.

No. 1–90–1.

Decided April 4, 1991.

*Michael F. Colley* and *Amy Sue Taylor,* for appellants.

*Lawrence S. Huffman,* for appellees James Romaker, M.D., and William Wright.

*Nancy D. Moody,* for appellee Panathur S.G. Reddy, M.D.

*Theodore M. Munsell,* for appellee Michael J. Hood.

THOMAS F. BRYANT, Judge.

This is an appeal from a decision entered in the Common Pleas Court of Allen County, granting summary judgment in favor of the defendant-appellees, James R. Romaker, M.D., Panathur S.G. Reddy, M.D. and Panathur S.G. Reddy, M.D., Inc.

On July 23, 1982, the plaintiff-appellant, Tina Burris, ("plaintiff") gave birth to a daughter, Jessica, at Lima Memorial Hospital. However, there were a number of complications at birth and Jessica spent most of her first two months in a Toledo Hospital.

On September 30, 1982, the plaintiff contacted attorney Michael Hood regarding potential claims for medical malpractice against both hospitals and her physicians. Attorney Hood advised the plaintiff that based on the information she provided, she probably did not have a cause of action. Hood apparently undertook no investigation of the circumstances underlying plaintiff's suspicion.

On December 8, 1985, Jessica died. The plaintiff became pregnant again and on December 24, 1987, during a prenatal appointment with her new obstetrician, Dr. Blackman, that doctor advised her of his belief that Jessica's complications at and after birth might have been due to a skull fracture caused by a forceps delivery.

On December 5, 1988, the plaintiff filed a complaint against the defendants asserting claims for medical malpractice, fraudulent misrepresentation, negligent infliction of emotional distress and wrongful death.

On February 23, 1989, defendant Romaker filed a motion for summary judgment which was granted on May 17, 1989. On April 24, 1989, defendant Reddy moved for summary judgment alleging that the plaintiff's claims were barred by the applicable statutes of limitations and on June 22, 1989, the trial court granted the motion.

The plaintiff now appeals the trial court's decisions and asserts four errors.

■ The plaintiff's first assignment of error is that:

"I. The court below erred when it held on the motion for summary judgment that plaintiff-appellant's statute of limitations as set forth in R.C. 2305.10 began to run on September 30, 1982 because plaintiff-appellant knew or should have known of the negligence of the defendants and her resulting injury."

R.C. 2305.10 governs bodily injury claims and provides in pertinent part:

"An action for bodily injury * * * shall be brought within two years after the cause thereof * * *."

The crucial questions are when did the plaintiff discover or when should she have discovered that Jessica's injuries were the result of the doctors' and/or the hospitals' negligence?

The answers hinge upon determination of the date of occurrence of the "cognizable event" from which running of the statute of limitations period commenced. The concept of a "cognizable event" has recently been defined in *Herr v. Robinson Memorial Hosp.* (1990), 49 Ohio St.3d 6, 9, 550 N.E.2d 159, 162 as:

" ' * * * some noteworthy event * * * which does or should alert a reasonable person-patient that an improper medical procedure, treatment or diagnosis has taken place.' "

The court in *Herr* also condensed the three-part test for determining the accrual date for medical malpractice claims and held that such a cognizable event must be related to the medical procedure, treatment or diagnosis and

should put the patient on notice of the need to pursue potential remedies. See *Allenius v. Thomas* (1989), 42 Ohio St.3d 131, 134, 538 N.E.2d 93, 96.

Here, the plaintiff argues that the accrual date was December 24, 1987, the date when she first became aware that Jessica's complications might have been caused by a skull fracture resulting from a forceps delivery. However, in all of its summary judgments for the defendants, the trial court found that the accrual date for statute of limitations purposes was September 30, 1982, that being the first date the plaintiff sought an attorney's advice for a potential medical malpractice claim.

Ten weeks after Jessica's birth, plaintiff sought a lawyer's assistance for pursuit of her suspected medical claims arising from the circumstances of Jessica's delivery.

Whatever the lawyer's advice may have been, the fact of a suspected claim related to a medical procedure, thus, a cognizable event, can be determined with certainty to have existed the date of that legal consultation, September 30, 1982.

Therefore, applying the reasoning of *Herr*, we agree with the trial court below, that no later date can have been that of accrual of plaintiff's medical negligence claims. Because application of the appropriate limitations period discloses those claims to have been time-barred, at the filing of the complaint herein, determination of an earlier, more precise date is unnecessary.

The first assignment of error is overruled.

■ The plaintiff's second assignment of error is that:

"II. The court below erred when it decided that plaintiff-appellant knew or should have known of the alleged fraud of defendants on September 30, 1982."

Here the plaintiff argues that while the fraudulent event was concealment from the time of Jessica's birth of information about the cause of Jessica's birth injury, the limitations period for recovery did not commence until she first learned on December 24, 1987 of another physician's suspicion that the cause of Jessica's health and mental complications was injury during her forceps delivery. She therefore infers defendants' concealment of the cause.

Plaintiff's conclusion of fraudulent concealment is based upon acceptance of the truth of the second physician's suspicion. Even assuming that the doctors and hospital personnel concealed the kind and cause of Jessica's "birth complications," a number of questions arise as to whether this concealment had any effect on the plaintiff's actions. One question is whether the concealment harmed Jessica or the plaintiff. A second question is whether the defendants had a duty to disclose to the plaintiff and if so, what exactly

this duty entailed. A third question is whether the plaintiff was misled by the concealment. While these questions are thought provoking, based on the plaintiff's almost immediate action in seeking legal assistance for a potential medical claim (ten weeks after Jessica's birth), we believe that any concealment did not have a tolling effect on the statute of limitations as it applies to plaintiff and her resulting actions in seeking recovery for damages.

The relevant statute governing time limitations for bringing an action for fraud is R.C. 2305.09(C):

"An action for any of the following causes shall be brought within four years after the cause thereof accrued:

" * * *

"(C) For relief on the ground of fraud[.]"

The elements of fraud as set out in *Gaines v. Preterm Cleveland, Inc.* (1987), 33 Ohio St.3d 54, 55, 514 N.E.2d 709, 712, are:

"(a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material .to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance."

In *Gaines,* the court held that "[t]he statutory period does not commence to run until the cause of action accrues, which occurs when the fraud and the wrongdoer are discovered." *Id.* at 56–57, 514 N.E.2d at 713. By seeking legal advice on September 30, 1982, the plaintiff in the case before us demonstrated her awareness of potential malpractice claims surrounding Jessica's birth. If any material facts had been concealed at that time plaintiff knew or should have known it and certainly could have discovered any such matter.

Based on the transcript and relevant case law, we concur with the trial court in finding that plaintiff's fraud claims accrued no later than September 30, 1982 and, therefore, that the four-year statutory period of limitations had elapsed prior to institution of the action below. The second assignment of error is overruled.

█ The plaintiff's third assignment of error is that:

"III. The court below erred when it decided that plaintiff-appellant knew or should have known of the negligent infliction of emotional distress pursuant to R.C. 2305.09 on September 30, 1982."

R.C. 2305.09(D) allows an action to be brought within four years of the cause and is a "catch-all" provision for recovery:

"For an injury to the rights of the plaintiff not arising on contract nor enumerated in sections 2305.10 to 2305.12, inclusive, 2305.14 and 1304.29 of the Revised Code."

In *Paugh v. Hanks* (1983), 6 Ohio St.3d 72, 6 OBR 114, 451 N.E.2d 759, the court allowed recovery for negligent infliction of emotional distress without any contemporaneous physical injury to the party seeking damages as historically required until then. However, the *Paugh* case can be distinguished from the one at bar, because in *Paugh* the plaintiff witnessed an accident as a bystander which precipitated plaintiff's immediate, severe emotional distress. Here, the appellant alleges that she was traumatized upon seeing Jessica in the delivery room immediately after the birth, July 23, 1982. Her affidavit describes this event in detail. The four-year period in which plaintiff must have commenced suit for recovery based on that event, applying R.C. 2305.-09(D), had passed before the complaint herein was filed.

Although, appellant argues tolling of the time of accrual because of continuing emotional distress until Jessica's death, perpetrated because of the medical care and treatment necessary because of defendants' alleged negligence, we have found no authority and perceive no justification for tolling application of the statute of limitations until the date of termination of continuing emotional distress rather than applying it from the date of the event precipitating that distress. The duration of emotional distress is more properly a matter in proof of damages in a timely action. Cf. *Reeser v. Weaver Bros., Inc.* (1989), 54 Ohio App.3d 46, 560 N.E.2d 819, in which it was held that:

"One who witnesses the negligent damaging of his property *over a period of time* arising out of the ongoing negligence of the defendant may not recover for the suffering of emotional distress." (Emphasis added.)

In part, the case before us differs from *Reeser* in that instead of emotional distress resulting from witnessing continuing injury to property, here we are concerned with emotional distress suffered over a long period of time by the appellant through observing the plight of another person resulting from the other's initial injury. The trial court correctly limited application of the statute of limitations to the date of the event initially causing the emotional distress notwithstanding continuation of distress from witnessing over a long period of time the circumstances of another caused by that initial event. Therefore, the plaintiff's third assignment of error is overruled.

■ The plaintiff's fourth and and final assignment of error is that:

"IV. The court below erred when it decided that the statute of limitations pursuant to R.C. 2125.02(D) began to run on September [*sic*] 28, 1985."

R.C. 2125.02(D) governs actions for wrongful death:

"An action for wrongful death shall be commenced within two years after the decedent's death."

The plaintiff urges us to adopt a discovery rule for wrongful death actions. The date of Jessica's death was December 28, 1985 and the plaintiff filed suit on December 5, 1988, which is a date obviously beyond the two-year time limit allowed by R.C. 2125.02(D). However, the plaintiff argues that the statute of limitations should begin to run on the date when she discovered that there was a potential problem with the delivery, that date being December 24, 1987, the day when her new obstetrician told her his belief that a forceps delivery caused Jessica's complications and presumably her ultimate death.

In *Taylor v. Black & Decker Mfg. Co.* (1984), 21 Ohio App.3d 186, 187, 21 OBR 199, 199–200, 486 N.E.2d 1173, 1174, the court held that an action for wrongful death must be commenced within two years of the decedent's death pursuant to R.C. 2125.02(D) and that the time limitation pertains to the right of action and not to the remedy. We agree. By failing to bring the action within two years of Jessica's death, the plaintiff is now barred from bringing an action under R.C. 2125.02(D).

The plaintiff's fourth assignment of error is therefore overruled.

Accordingly, the judgment of the Common Pleas Court of Allen County is affirmed.

*Judgment affirmed.*

HADLEY and SHAW, JJ., concur.