OPINION
{¶ 1} Appellant, Caliope Gialousis, timely appeals a July 28, 2005, Judgment Entry of the Mahoning County Court of Common Pleas. This entry granted Appellees, Eye Care Associates, Inc., Dr. Keith Wilson, and Dr. R.E. Wyszynski, summary judgment on Appellant's complaint. The trial court found that Appellant's claims were barred by the statute of limitations.
 {¶ 2} In her complaint, Appellant asserted claims for medical malpractice and spoliation of evidence against Appellees. Specifically, Appellant claimed Appellees were negligent in performing her opthalmological services and acted below the standard of care in failing to provide emergency treatment for the retinal detachment in her right eye. As a result, she completely lost the vision in her right eye. Appellant also alleged that Appellees willfully altered medical records in her case with knowledge of her probable litigation.
 {¶ 3} Appellant originally filed her complaint on March 1, 2002, under Case Number 2002 CV 00640 (Complaint I). Appellees filed a motion for summary judgment based on the statute of limitations, but it was overruled. Appellant thereafter voluntarily dismissed her complaint without prejudice pursuant to Civ.R. 41(A)(1).
 {¶ 4} On refiling of the complaint (Complaint II), Appellees filed a motion with the trial court seeking to compel Appellant to disclose privileged documents concerning her initial communications with a law firm as it might relate to her statute of limitations. The trial court granted Appellees' motion and disclosed certain documents after an in-camera inspection. On July 28, 2005, the trial court granted *Page 3 
Appellees summary judgment as a matter of law based, in part, on the allegedly privileged information.
 {¶ 5} Appellant timely appealed the trial court's decision to grant Appellees summary judgment and asserts two assignments of error on appeal. She argues that there is a genuine issue of material fact as to the date of the "cognizable event" which would cause her malpractice statute of limitations to run. She also argues that even if her malpractice action was untimely, her spoliation of evidence claim should have survived. Appellant also claims as a threshold matter that the trial court abused its discretion in disclosing her privileged documents to Appellees. For the following reasons, however, Appellant's assignments of error lack merit and are overruled.
 {¶ 6} We will address Appellant's second assignment of error first, since it concerns the evidentiary ruling on which the summary judgment award was based. In this assignment of error she claims,
 {¶ 7} "THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY ORDERING APPELLANT TO PRODUCE RECORDS RELATED TO HER COMMUNICATIONS WITH A LAW FIRM AND BY SUBSEQUENTLY DISCLOSING THOSE RECORDS TO COUNSEL FOR APPELLEES."
 {¶ 8} A trial court has broad discretion in rendering discovery determinations. As such, an appellate court should not second-guess a trial court's decision absent an abuse of discretion. Manofsky v.Goodyear Tire Rubber Co. (1990), 69 Ohio App.3d 663, 668,591 N.E.2d 752. An abuse of discretion is more than an error of *Page 4 
judgment; it signifies that a trial court's attitude was unreasonable, unconscionable, or arbitrary. State v. Adams (1980), 62 Ohio St.2d 151,157, 404 N.E.2d 144.
 {¶ 9} As previously stated, the trial court's release of the privileged documents was partially the basis for its award of summary judgment. Appellant alleged that the "cognizable event" beginning her one-year statute of limitations was March 27, 2001. This is the date that she claims she was advised by a surgeon that the problem with her right eye, retinal detachment, should have been treated on an emergency basis by Appellees.
 {¶ 10} Appellees disagreed that March of 2001 was the pertinent statutory date. They argued that July 14, 2000, the date of Appellant's last scheduled appointment with Dr. Wyszynski, was the date of the cognizable event. In furtherance of their argument, Appellees pointed to the fact that Appellant did not appear for this appointment and Dr. Wyszynski received a letter from Appellant's prior legal counsel on July 20, 2000, seeking copies of Appellees' medical records. Thus, Appellees argue that Appellant must have been aware of her potential medical malpractice claim at least by that date since she had an attorney investigating the matter. Appellees requested Appellant's file from the law firm Elk Elk in order to prove their defense.
 {¶ 11} Thereafter, the trial court found that Appellant waived her attorney-client privilege when she voluntarily testified in an affidavit opposing summary judgment without asserting her privilege pursuant to R.C. § 2317.02(A). The applicable version of R.C. § 2317.02(A) states: *Page 5 
 {¶ 12} "The following persons shall not testify in certain respects:
 {¶ 13} "(A) An attorney, concerning a communication made to the attorney by a client in that relation or the attorney's advice to a client, except that the attorney may testify by express consent of the client * * * and except that, if the client voluntarily testifies * * * the attorney may be compelled to testify on the same subject;" (Emphasis added.)
 {¶ 14} Appellant claims the trial court should not have disclosed the disputed documents and that it erred in not applying the three-part test known as the "Hearn" rule, which was set forth in Hearn v. Rhay
(E.D.Wash.1975), 68 F.R.D. 574, 33 Fed.R.Serv.2d 704. The Second, Sixth, Eighth, and Twelfth Districts have all adopted this approach in dealing with the attorney-client privilege. See H D Steel Service, Inc. v.Weston, Hurd, Fallon, Paisley Howley (July 23, 1998), 8th Dist. No. 72758, at 3; Frank W. Schaefer, Inc. v. C. Garfield Mitchell Agency,Inc. (1992), 82 Ohio App.3d 322, 331, 612 N.E.2d 442; Ward v. Graydon,Head Ritchey (2001), 147 Ohio App.3d 325, 330, 770 N.E.2d 613;McMahon v. Shumaker, Loop Kendrick, LLP, 162 Ohio App.3d 739, 744,2005-Ohio-4436, 834 N.E.2d 894.
 {¶ 15} "Under Hearn, a party impliedly waives the attorney-client privilege through its own affirmative conduct if (1) assertion of the privilege is the result of some affirmative act, such as filing suit, by the asserting party, (2) through the affirmative act, the asserting party has placed the protected information at issue by making it relevant to the case, and (3) application of the privilege would deny the opposing party access to information vital to its defense." Id. at ¶ 15. *Page 6 
 {¶ 16} In the instant matter, Appellees argued in their January 7, 2005, motion to compel that the disclosure of the allegedly privileged documents was necessary in order for them to fully assert their statute of limitations defense. Appellees directed the trial court's attention to Appellant's Complaint I and Appellee's motion for summary judgment. In opposition to Appellees' first motion for summary judgment, Appellant argued that the fact that she had an attorney review her medical file did not establish that she was considering a malpractice claim. Appellant stated in her attached affidavit that she only consulted Elk Elk at the urging of her family concerning, "the administration and monitoring of my Cyclosporin medications." (Affidavit of Caliope Gialousis.) She also stated that she had not "lost faith in" Appellees until March 27, 2001. (Affidavit of Caliope Gialousis.) The trial court subsequently denied summary judgment on Complaint I, finding that genuine issues of material fact still existed. Appellant later dismissed her case without prejudice. (April 16, 2004, Judgment Entry.)
 {¶ 17} After the refilling of her complaint and at the urging of Appellees, the trial court conducted an in-camera inspection of the Elk Elk file. The trial court subsequently disclosed certain documents over Appellant's objections. It held that Appellant had partially waived the attorney-client privilege regarding certain communications as they related to the statute of limitations in a malpractice action. (Jan. 26, 2005, Judgment Entry.)
 {¶ 18} We note that Appellees argued for the first time at oral argument that Appellant should have appealed from the trial court's January 26, 2005, Judgment *Page 7 
Entry and that by failing to do so she has waived the right to contest this issue. However, the fact that Appellees did not raise this argument in their brief on appeal constitutes a waiver. App.R. 16(A) and (B). Thus, we will not address this issue.
 {¶ 19} Turning back to Appellant's argument on appeal, the following case is relevant. In Amer Cunningham Co., L.P.A. v. CardiothoracicVascular Surgery of Akron, 9th Dist. No. 20899, 2002-Ohio-3986, Amer Cunningham Co., L.P.A. (Amer) filed suit against Cardiothoracic Vascular Surgery of Akron (CVSA) to recover legal fees CVSA owed. During the litigation, Amer subpoenaed the testimony of CVSA's prior counsel, who objected. However, the president of CVSA had already testified in the case about the billing statement for legal fees and about a conversation he had with counsel regarding the bill in dispute. Id. at ¶ 18. The court determined that CVSA voluntarily waived the privilege as it related to that subject matter because the CVSA company president had already voluntarily testified as to the attorney's communication without objection. Id.
 {¶ 20} As in Amer Cunningham Co., L.P.A., supra, Appellant in the instant matter testified through affidavit without objection in her first civil action about her reasons for consulting Elk Elk. Appellant said she met with counsel at the urging of her family about the administration of her medicine. She also said that she had not at the time "lost faith" in Appellees. Accordingly, since Appellant testified about her communications with counsel without objection, the trial court's determination that Appellant waived her claimed privilege pursuant to R.C. § 2317.02(A) appears to be well within its discretion. *Page 8 
 {¶ 21} Further, the documents disclosed by the trial court reveal certain evidence which appears, if not to contradict, at least to supplement evidence contained in Appellant's affidavit, including a letter to Appellant from Elk Elk. Elk Elk wrote to Appellant that it would not represent her in her medical malpractice action against Eye Care Associates. The letter further stated that the firm would not be protecting Appellant's statute of limitations and that according to their calculations Appellant had, "until April 1, 2001, to filesuit, or this medical malpractice claim will be forever barred by the Statute of Limitations." (Emphasis in original.) (Aug. 30, 2000, letter.)
 {¶ 22} In addition, Elk Elk's case information and new client intake forms reflect that Appellant was considering a potential medical malpractice claim arising from the loss of vision in her right eye and the deteriorating vision in her left eye. The forms identified Appellees' business address as the location of the incident and the date of the incident was listed as August of 1998. (June 13, 2000, Case Information, June 6, 2000, New Client Intake Sheet.)
 {¶ 23} Appellant urges that the trial court abused its discretion in disclosing the disputed documents and should have used the "Hearn" test earlier discussed. However, a review of the record reflects that even if we were to mandate the standard Appellant urges, the trial court would still be correct in its disclosure. Again, Appellant filed suit for malpractice and then voluntarily testified in her affidavit as to the scope of her consultation with original counsel. Thus, the privileged information was in issue due to her testimony. Further, applying the privilege in this case would *Page 9 
have denied Appellees access vital to their statute of limitations defense. While Appellant makes certain vague and self-serving statements in her affidavit and provides no specific information or dates, the information obtained from the Elk Elk file is very specific and dated. While Appellant claims she sought legal counsel solely at the urging of her family because of concerns about the medication she received, this clearly evinces a suspicion that Appellees committed malpractice. Further, once she got to counsel's office, the scope of her malpractice suspicions broadened considerably. Accordingly, even underHearn, Appellant impliedly waived her attorney-client privilege through her own, affirmative conduct.
 {¶ 24} Based on the foregoing, Appellant's privileged communications with Elk Elk were waived once she voluntarily testified about the same subject matter, that is, the reason she was meeting with potential legal counsel. R.C. § 2317.02(A). The trial court did not abuse its discretion and Appellant's second assignment of error lacks merit.
 {¶ 25} Appellant's first assignment of error is addressed next. She argues,
 {¶ 26} "THE TRIAL COURT ERRED BY GRANTING SUMMARY JUDGMENT WHERE THERE EXISTED A GENUINE ISSUE OF MATERIAL FACT REGARDING (1) THE TIME WHEN APPELLANT DISCOVERED HER CLAIM FOR THE PURPOSES OF COMMENCING THE RUNNING OF THE STATUTE OF LIMITATIONS [sic] (O.R.C. SECTION 2305.11); AND (2) THE APPELLANT'S PROOF OF THE ELEMENTS OF HER CLAIM FOR SPOLIATION OF EVIDENCE." *Page 10 
 {¶ 27} Appellant divides her first assignment of error into two issues for review. Her first issue states,
 {¶ 28} "WHERE THERE IS EVIDENCE THAT APPELLANT OPENED A FILE WITH AN ATTORNEY AND RECEIVED A LETTER DECLINING REPRESENTATION, DOES THE TRIAL COURT ERR IN GRANTING SUMMARY JUDGMENT IN FAVOR OF DEFENDANTS, DOCTORS, ON THE BASIS THAT THE LETTER FROM THE ATTORNEY CONSTITUTED A `COGNIZABLE EVENT SO AS TO TRIGGER THE RUNNING OF THE STATUTE OF LIMITATIONS UNDER O.R.C. SECTION 2301.11."
 {¶ 29} Before we begin our discussion of the issues, it is important to understand the state of the record, here, and the underlying undisputed facts.
 {¶ 30} Appellant has apparently had a long history of chronic health problems. On appeal, Appellant urges that we consider this tangled history when we view the facts in this case. Unfortunately, the record does not support Appellant's allegations because Appellant does not present any evidence of these alleged problems. While she has attached various documents from various physicians in her response to summary judgment filed in Complaint I, none of these documents are evidence. They are simply copies of what appear to be letters and/or notes haphazardly attached to Appellant's response. Thus, they could not and cannot be considered as evidence.
 {¶ 31} The only evidence before us consists of the affidavit of Appellant, affidavits from Appellees Drs. Wilson and Wyszynski and the documents from the Elk *Page 11 Elk files allowed by the trial court. All of the evidence is unrebutted by the respective opposing party.
 {¶ 32} From the affidavits of the Appellees, we can glean that Appellant began treating with Eye Care Associates when Dr. Wilson evaluated her for an inflammatory condition in both eyes on December 8, 1998. (Wilson Affidavit.) Appellant continued to treat with Dr. Wilson until he referred her to Dr. Wyszynski for a retinal evaluation in 1999. (Wilson Affidavit.) On May 4, 1999, Dr. Wyszynski diagnosed Appellant with retinal detachment and almost total loss of vision in her right eye. (Wyszynski Affidavit.). Dr. Wyszynski performed surgery on June 16, 1999 in an attempt to reattach the retina. (Wyszynski Affidavit.) His attempt was unsuccessful and Appellant lost all vision in her right eye. (Wyszynski Affidavit.) Dr. Wyszynski last examined Appellant on March 7, 2000. (Wyszynski Affidavit.) Thereafter, Appellant failed to return for her last appointment, which was scheduled for July 14, 2000. (Wyszynski Affidavit.) According to the unrebutted evidence, she never returned to see Appellees following her March 7, 2000, visit.
 {¶ 33} Appellant's own affidavit does not dispute or rebut any of this information in any way. In fact, her affidavit states in all relevant parts:
 {¶ 34} "The [sic] during my medical treatment my family was concerned as to the administration and monitoring of my Cyclosporin medications.
 {¶ 35} "That they were concerned about the deterioration of the vision in my left eye. *Page 12 
 {¶ 36} "That they wanted me to get the records of my previous and ongoing medical treatment for my eyes.
 {¶ 37} "That I met with a staff member of Elk Elk.
 {¶ 38} "That after the above visit I did not speak to anyone else at Elk Elk ever again.
 {¶ 39} "That I had not lost faith in Dr. Wyzenski [sic] or Dr. Wilson until March 27, 2001.
 {¶ 40} "That I ultimately went to the Cleveland Clinic for treatment of the left eye.
 {¶ 41} "That the retina on my left eye detached on March 27, 2001.
 {¶ 42} "That I was advised by doctors at the Cole Eye Institute that when your retina detaches you should have surgery immediately.
 {¶ 43} "That I had the emergency operation to reattach this retina in my left eye and my sight was immediately restored.
 {¶ 44} "That I was told by the doctor at the Cleveland Clinic at that time that your vision comes back or it doesn't following the reattachment surgery.
 {¶ 45} "That it was at this time that I knew for the first time that Dr. Wyzenski [sic] had not been truthful with me when he told me that following the June 1999 surgery that sometimes your vision takes 6 weeks to return and at worst I would have functional vision. *Page 13 
 {¶ 46} "That it was at that time of March 27, 2001 that I first learned of the need to reattach your retina as soon as possible and that if you do immediate reattachment your vision has a much better chance of returning.
 {¶ 47} "That I was sent a letter by Dr. Robert Wentz that urged me not to ignore my detached retina and that `a delay of one or two days could mean permanent damage to your vision that could not be repaired. [sic]
 {¶ 48} "Drs. Wilson and Wyzenski [sic] never advised me, at any time, during their care for me of the urgency of my retinal problems or of what could happen if surgery was not done as soon as possible." (Affidavit of Caliope Gialousis.)
 {¶ 49} Apparently, Dr. Wentz was the physician consulted by Appellant in 2001 for the detached retina of her left eye.
 {¶ 50} While Appellant's affidavit is somewhat vague and leaves out certain pertinent dates, what is clear is that, despite her avowal that she had not "lost faith in" Appellees, she left their care permanently in March of 2000 and certainly consulted with Elk Elk about a possible malpractice claim against them. We know from evidence in the Elk Elk file that the date of her medical malpractice consultation was June 6, 2000. We also know that after she permanently left Appellees' care she sought care from other medical practitioners for deteriorating vision in her other eye.
 {¶ 51} Bearing all of the above in mind, we now turn to a review of Appellant's assignment of error and subissues.
 {¶ 52} In reviewing a decision to grant summary judgment, an appeals court must review the same evidence and standards as the trial court and consider the *Page 14 
matter independently. Brown v. Scioto Bd. of Commrs. (1993),87 Ohio App.3d 704, 711, 622 N.E.2d 1153; Morehead v. Conley (1991),75 Ohio App.3d 409, 411-412, 599 N.E.2d 786. A court should grant summary judgment when there are no genuine issues of material fact and when construing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to only one conclusion — that the moving party is entitled to judgment as a matter of law. Civ.R. 56(C).
 {¶ 53} The moving party must first point to some evidence that affirmatively demonstrates the nonmoving party cannot support his claim.Dresher v. Burt (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264. If the moving party meets this burden, then the nonmoving party must respond and, "set forth specific facts showing that there is a genuine issue for trial[.]" Id.
 {¶ 54} R.C. § 2305.113(A) provides a one-year statute of limitations for an optometric malpractice claim. However the one-year period can be extended if the claimant gives the alleged defendant written notice of the potential claim within 180 days. R.C. § 2305.113(B)(1). In the instant case, Appellant evidently never provided Appellees with written notice and this fact is not at issue.
 {¶ 55} The Ohio Supreme Court has held that a cause of action for medical malpractice does not accrue until the patient discovers, or should have discovered in the exercise of reasonable care and diligence, an injury. This is commonly referred to as the discovery rule.Oliver v. Kaiser Community Health Found. (1983), 5 Ohio St.3d 111,449 N.E.2d 438, at syllabus. Thereafter, in Hershberger v. Akron CityHosp. (1987), 34 Ohio St.3d 1, 516 N.E.2d 204, the Supreme Court set forth a three-part *Page 15 
test to aid in determining the date that a medical malpractice cause of action accrues. The factors to consider on a case-by-case basis are:
 {¶ 56} "[1] when the injured party became aware, or should have become aware, of the extent and seriousness of his condition; [2] whether the injured party was aware, or should have been aware, that such condition was related to a specific professional medical service previously rendered him; and [3] whether such condition would put a reasonable person on notice of need for further inquiry as to the cause of such condition." Id. at paragraph one of the syllabus.
 {¶ 57} In Allenius v. Thomas (1989), 42 Ohio St.3d 131, 538 N.E.2d 93, the Supreme Court consolidated the Hershberger test and found that the "extent and seriousness of his condition" language set forth byHershberger requires a "cognizable event" that leads or should lead the plaintiff to believe that his or her injury is related to a prior medical diagnosis or procedure and should alert the plaintiff of the need to pursue a remedy. Id. at syllabus. However, a plaintiff does not have to be fully aware of the extent of his injury before a cognizable event has occurred. A "noteworthy event" is enough. Id. at 134-135.
 {¶ 58} In Flowers v. Walker, (1992), 63 Ohio St.3d 546,589 N.E.2d 1284, the Ohio Supreme Court further explained the manner in which we determine when a cognizable event actually occurs. It stated, "constructive knowledge of facts, rather than actual knowledge of their legal significance, is enough to start the statute of limitations running under the discovery rule. * * * Rather, the `cognizable event' itself puts the plaintiff on notice to investigate the facts and circumstances relevant to her *Page 16 
claim in order to pursue her remedies." (Emphasis in original; citations omitted.) Id. at 549.
 {¶ 59} Accordingly, once the cognizable event occurs, a potential plaintiff must investigate the circumstances relevant to his claim and diligently pursue any potential remedy. Simonds v. Kearney, 9th Dist. No. 01CA0035, 2002-Ohio-761, at ¶ 11.
 {¶ 60} In Flowers, the plaintiff was diagnosed with breast cancer. Flowers knew at the time of her diagnosis that her earlier mammogram was interpreted as negative. Accordingly, when she was diagnosed with a malignancy, "an occurrence of facts and circumstances had taken place which should have led Flowers to believe that her condition was related to previous diagnosis and treatment." Id. at 550. Thus, Flowers' malpractice statute began to run at that time of her diagnosis even though she did not know all the facts and circumstances surrounding the apparent misreading of her earlier mammogram. Id.
 {¶ 61} Appellant in the matter before us argues that she consulted Elk Elk at the urging of her son and that she did not lose "faith" in Appellees until March 27, 2001, when she was advised by another physician that her right eye retinal detachment should have been urgently treated. As such, she claims that March 27, 2001 was the cognizable event that caused her one year window within which to file a medical malpractice action to begin to run. She then concludes that Complaint I, filed March 1, 2002, was timely.
 {¶ 62} However, Appellant's self-serving affidavit indicating that at some point she "lost faith in" her physicians is irrelevant for determining the date of the *Page 17 
cognizable event. Whatever she may mean by this vague statement, it is not a material fact that prevents summary judgment. Instead, we must look to the actual facts and circumstances of this case to determine when Appellant should have recognized that her injury was related to Appellees' treatment. Flowers at 550.
 {¶ 63} The evidence does not support Appellant's arguments that March 27, 2001, was the date of the cognizable event. The documents disclosed by the trial court following Appellees' motion to compel reveal that Appellant consulted the law firm of Elk Elk on June 6, 2000. Further, her Elk Elk case information sheet reflects August, 1998, as the "DATE OF INCIDENT." (June 13, 2000, Case Information.)
 {¶ 64} The intake sheet reveals that Appellant identified Eye Care Associates as the party against whom she was making a potential malpractice claim and that the claim arose from occurrences of as far back as August of 1998. (June 6, 2000, New Client Intake Sheet.) Thereafter, while Elk Elk advised Appellant via letter that it would not be representing her, this letter also stated that they calculated her statute of limitations for a claim against Eye Care Associates would expire on April 1, 2001, based on the fact that she terminated her treatment with Eye Care Associates in March of 2000. (Aug. 30, 2000, letter.) These two documents together with her own affidavit indicate Appellant knew or should have known the extent and seriousness of her condition, the condition was related to services rendered by Appellee and that she needed to inquire further into the cause of her condition; fulfilling the Hershberger, supra, test. We can base our conclusion that these three parts of the *Page 18 
test were met largely because Appellant sought legal representation in a possible malpractice action against Appellees in June of 2000.
 {¶ 65} In Halliwell v. Bruner (Dec. 14, 2000), 8th Dist. Nos. 76933, 77487, the court of appeals held that, "consulting with an attorney itself indicates a cognizable event." Id at 7, citing Burns v.Romaker (1991), 71 Ohio App.3d 772, 595 N.E.2d 425. The court inHalliwell further stated that the plaintiffs' claims were barred in that case even though they may have received, "an erroneous opinion from an attorney that no (medical) malpractice occurred." Id. citingBurns at 773.
 {¶ 66} Appellant directs our attention to an earlier Eighth District decision, Tanzi v. Mahigian (Dec. 18, 1997), 8th Dist. No. 71872, in which the Eighth District found that the plaintiffs consultation with an attorney in addition to the issuance of a 180-day letter were not enough to constitute a cognizable event in that case. Instead, and in spite of the 180-day letter, the court found that the cognizable event had not occurred until the plaintiffs subsequent surgery. Id. at 5. The court explained that until her subsequent surgery, "all of the professionals, both legal and medical, did not believe that Mrs. Tanzi's difficulties were caused through negligence of any kind." Id.
 {¶ 67} The Tanzi Court distinguished the Ohio Supreme Court's decision in Flowers, supra, stating, "[w]hile Flowers, supra, held that a plaintiff need not have discovered all of the relevant evidence, Mrs. Tanzi was able to discover not one whit of relevant evidence leading anyone to attribute her problems to negligence." Id. *Page 19 
 {¶ 68} In fact, in Tanzi, supra, the subsequent surgeon testified that, "it would be impossible for any physician to have diagnosed the cause of Mrs. Tanzi's injury from a review of the medical records and an examination of Mrs. Tanzi[.] * * * [I]t was only after the [subsequent] surgery * * * that a cause could be found for Mrs. Tanzi's continuing problem[.]" Id. at 2.
 {¶ 69} Despite the fact that medical professionals later consulted by Appellant readily told her that a detached retina must be treated on an emergency basis, and thus the standard of care should have been easily discoverable to her, Appellant argues that Appellees' medical negligence was not discoverable in her case, since Appellees altered her medical records. Specifically, she claims that Appellees' medical records were altered to reflect that Dr. Wilson examined Appellant's retina. Appellant claims that the alleged alteration may have impacted Elk 
Elk's decision not to represent her. This allegation is discussed further in Appellant's next argument, but it presents nothing more than speculation; she supplied no evidence from other health care professionals to substantiate this allegation and no evidence as to the reasons Elk Elk chose not to pursue her case.
 {¶ 70} Appellant also relies on Kollmorgan v. Raghavan (2000), 7th Dist. No. 98 CA 123, in support of her argument. She claims that she, like the plaintiff in Kollmorgan, did not fully realize that she had a medical malpractice claim until after her second surgery. However, Appellant misreads and misrepresents the holding in Kollmorgan. *Page 20 
 {¶ 71} Margaret Kollmorgan was to have a full hip replacement following unsuccessful surgery to correct her broken hip. During the replacement surgery, her surgeon determined he was unable to place the prosthetic hip because Margaret was unable to bend her knee. Id. at 1.
 {¶ 72} Kollmorgan filed suit for medical malpractice and the trial court subsequently granted her surgeon summary judgment since her claim appeared to be barred by the statute of limitations. The trial court's decision was based on Kollmorgan's deposition testimony. She testified that she believed her doctor was negligent after her unsuccessful hip replacement surgery because he had not listened to her before the surgery when she told him that she was unable to bend her knee. Thus, the trial court determined that her statute of limitations began to run on the date of her surgery. Thereafter, however, she submitted an affidavit to the trial court explaining that her deposition testimony was given in hindsight. Accordingly, since Kollmorgan submitted conflicting evidence as to a material issue of fact through her deposition and later affidavit, we concluded that genuine issues of material fact existed precluding summary judgment. Whether or not Kollmorgan was truthful in her affidavit was an issue of credibility for the jury to decide. Id. at 4.
 {¶ 73} In the matter before us, and regardless of the allegation that her medical records were altered, Appellant fails to set forth any evidence to indicate that the cause of her right eye blindness was completely undiscoverable should she seek a subsequent medical examination. See Tanzi, supra, at 5. In fact, Appellant admitted in her affidavit that she was readily advised by doctors at the Cole Eye *Page 21 
Institute and the Cleveland Clinic that a detached retina requires immediate surgery prior to her second surgery. (Affidavit of Caliope Gialousis.) This tends to support the opposite conclusion ofTanzi, supra.
 {¶ 74} Appellant's own affidavit appears to support that her cognizable event occurred by at least June of 2000. She stopped treatment with her Appellee physicians completely and sought legal advice as to a possible medical malpractice action. Further, her condition was such that apparently any subsequent physician could have confirmed the need for emergency treatment for her right eye, treatment she apparently did not receive from Appellees. She sought the services of other medical professionals for further medical consultation and treatment for her other eye. She, herself, states that Appellee Dr. Wyszynski told her that she should experience results from her June, 1999 surgery within six weeks post-surgery. Obviously, she did not. Whether or not Appellee was truthful as to this six week post-op period, and whether she found out this was an untruth almost two years later does not impact at all on the date of the cognizable event, here. The record shows that she suspected malpractice had occurred and visited a lawyer to act on this suspicion in June of 2000. Further, whatever she may mean in her affidavit when she stated she had not "lost faith in" Appellees until 2001, this "faith" did not extend to allowing them to provide further treatment for her and did not prevent her from seeking a lawyer's representation in a malpractice action aimed at Appellees.
 {¶ 75} Accordingly, and based on the evidence before the trial court, we can only conclude that Appellant was fully aware of the fact that she may have had a *Page 22 
medical malpractice claim against Appellees at least by the time she consulted Elk Elk. She was on notice to investigate and she did in fact partially investigate her potential claims. Although the exact cognizable event date may not be able to be pinpointed specifically based on the evidence, what is clear is that Appellant did not file her first medical malpractice complaint against Appellees until March 1, 2002 — more than one year after she abandoned treatment with Appellees and sought her initial consultation with a law firm regarding her potential claims.
 {¶ 76} Based on the foregoing, Appellant's original complaint dated March 1, 2002, against Appellees was filed beyond the one-year statute of limitations. Thus, her claim was barred and summary judgment was appropriate.
 {¶ 77} Issue two of Appellant's first assignment of error asserts,
 {¶ 78} "WHERE THE TRIAL COURT APPARENTLY DETERMINES THAT APPELLANT'S CLAIM IS TIME-BARRED BY THE APPLICABLE STATUTE OF LIMITATIONS, AND THERE IS CLEAR EVIDENCE THAT DEFENDANTS, DOCTORS, ALTERED APPELLANT'S MEDICAL RECORDS, DOES THE TRIAL COURT ERR IN DISMISSING APPELLANT'S INDEPENDENT CLAIM FOR SPOLIATION OF EVIDENCE."
 {¶ 79} As earlier indicated, Appellant also asserted a claim against Appellees for spoliation of the evidence. The elements for the tort of interference with or destruction of evidence are:
 {¶ 80} "(1) pending or probable litigation involving the plaintiff, (2) knowledge on the part of defendant that litigation exists or is probable, (3) willful destruction of *Page 23 
evidence by defendant designed to disrupt the plaintiff's case, (4) disruption of the plaintiff's case, and (5) damages proximately caused by the defendant's acts;" Smith v. Howard Johnson Company, Inc. (1993),67 Ohio St.3d 28, 29, 615 N.E.2d 1037.
 {¶ 81} Appellant argues that the trial court erred in dismissing her spoliation of evidence claim since Appellees' alteration of Appellant's medical records may have caused the original law firm, Elk Elk, to decline representation. Appellant presented the affidavit testimony of a forensic document analyst in support of this claim. However, it is not clear whether the trial court considered this "affidavit" as evidence. The trial court dismissed all of Appellant's claims without specifically mentioning her spoliation allegation or this affidavit.
 {¶ 82} In fact, the forensic document analyst's "affidavit" was not properly submitted as evidence in summary judgment since the document submitted to the trial court was simply a facsimile copy of an affidavit. The original affidavit was not filed with the trial court. Further, the forensic analyst's opinion expressed in his affidavit repeatedly refers to findings set forth in an attached report referred to as Exhibit A. However, Exhibit A was not attached to the photocopied affidavit filed with the trial court. It should also be mentioned that the affidavit also failed to identify the forensic analyst's credentials.
 {¶ 83} Civ.R. 56(E) summary judgment states in part:
 {¶ 84} "Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated in the *Page 24 
affidavit. Sworn or certified copies of all papers or parts of papers referred to in an affidavit shall be attached to or served with the affidavit."
 {¶ 85} Thus, this argument on appeal lacks merit since the only "evidence" in support was not properly before the trial court. It was not an original affidavit; it did not establish this potential expert's credentials; and it did not include the report that was the basis of his opinion. Accordingly, this lack of evidence was sufficient basis for the trial court's summary judgment decision as to Appellant's spoliation of evidence allegation. Civ.R. 56(E).
 {¶ 86} Even if we assume this affidavit was admissible, Appellant's spoliation of evidence claim lacks merit.
 {¶ 87} Appellant argues in her brief on appeal that the first and second elements of destruction or spoliation of evidence, i.e., pending or probable litigation involving Appellant and knowledge on the part of defendant that litigation exists or is probable, were satisfied by the fact that Appellees received a letter from Elk Elk seeking Appellant's medical records for review. These allegations are supported by Dr. Wyszynski's affidavit filed in Complaint I in which he states that he received a letter from Elk Elk requesting Appellant's medical records. Thus, the first and second elements of her claim might be satisfied in order to defeat an award of summary judgment.
 {¶ 88} Appellant points to the testimony of her forensic document analyst in support of the third element, willful destruction of evidence by defendant designed to *Page 25 
disrupt the plaintiff's case. The forensic document analyst, Robert D. Kullman, states in his "affidavit,"
 {¶ 89} "It is my opinion, to a high degree of scientific certainty, the last three black ink entries in the patient progress notes of 6-19-99 were written at a different time/condition as the other black ink entries.
 {¶ 90} "It is my opinion, to a high degree of scientific certainty, the tenth and twelfth lines of the right column patient progress notes of 4-21-99 were written at a different time/condition as the remainder of the entries.
 {¶ 91} "It is my opinion the date of the 4-21-99 patient progress notes was originally written 4-15-99 and the overwriting of this 4-15-99 date was done with a different pen than the pen used to write the 4-15-99.
 {¶ 92} "It is my opinion the patient progress notes of 4-21-99 are written on a different form than any of the other patient progress notes/examination forms." (Affidavit of Robert D. Kullman.)
 {¶ 93} Appellant argues that Kullman's "testimony" prevents summary judgment since her medical records were altered to show that Dr. Wilson had examined her retina. Again, even assuming the trial court could accept Kullman's affidavit, it still fails to identify or explain the substance of what was altered in Appellant's medical records. Unlike her argument on appeal, Kullman's affidavit merely points out that Appellant's records had notes written on different dates by a different pen. This "affidavit" does not say anything about the content of the medical records or whether Dr. Wilson examined Appellant's retina. The patient progress *Page 26 
notes to which Kullman refers were not attached. Accordingly, there was no evidence tending to support this element of her spoliation claim.
 {¶ 94} Appellant also argues that, "[i]t is certainly plausible that the previous law firm [Elk Elk] may have based its decision not to pursue the matter on the facts contained in the altered records." (Appellant's Brief, p. 23.) On its face this argument is mere conjecture, since there was no evidence to show the reason that Elk Elk decided not to represent Appellant. Appellant herself says this interpretation is "plausible," not that it is fact. In addition, the fact that Elk Elk evidently chose not to represent Appellant does not mean that another attorney would not have taken her case. In fact, Elk Elk explicitly advised her of what they identified as the expiration of her statute of limitations, yet Appellant did not file her complaint within that time period.
 {¶ 95} Ohio courts have held that for a party to be successful in a spoliation of evidence claim he or she must prove, "1) the absence of the destroyed evidence or the destruction of the evidence made it impossible for plaintiff to pursue the separate civil action; and 2) plaintiff could prove that the destroyed evidence was of such a nature as to enable successful pursuit of the civil action." Williams v.Dunagan (May 5, 1993), 9th Dist. No. 15870, 2, citing Tomas v.Nationwide (1992), 79 Ohio App.3d 624, 631, 607 N.E.2d 944. With this in mind, it cannot be said that Appellant was prevented from pursuing her civil action based on the alleged alteration of her medical records. She was aware of a potential medical mistake yet she did not timely file her complaint. *Page 27 
 {¶ 96} Finally, the record is devoid of any evidence that Appellees willfully altered her medical records in an effort to disrupt her potential medical malpractice claim. The fact that Appellees wrote notes in her records with a different pen at a separate time is not enough to show that the added notes were designed to prevent Appellant's potential medical malpractice claim.
 {¶ 97} Based on the foregoing, Appellant failed to set forth sufficient evidence in support of her alleged spoliation of evidence claim. As such, Appellant's second issue in her first assignment of error lacks merit and is overruled.
 {¶ 98} In conclusion, both of Appellant's assignments of error lack merit, and the trial court's decision awarding Appellees summary judgment as a matter of law is affirmed in full.
Vukovich, J., concurs.
 DeGenaro, P.J., concurs.